COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Elder, Frank, Humphreys, Kelsey, Haley, Petty, Beales, Alston and Huff
Argued at Richmond, Virginia


TERRANCE ROBERT HENDERSON, S/K/A
 TERRENCE HENDERSON

v.      Record No. 0688-10-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE JAMES W. HALEY, JR.
FEBRUARY 28, 2012


UPON A REHEARING EN BANC

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Benjamin N.A. Kendrick, Judge

Elizabeth Lauwaert Tuomey (Clardy and Tuomey, PLLC, on brief),
for appellant.

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellee.


I.  INTRODUCTION

Terrance Robert Henderson ("Henderson") appealed the result of his probation

revocation hearing and assigned as error that the trial court "violated [his] right of confrontation

by admitting . . . hearsay testimony."

In an opinion published on June 21, 2011, a divided panel reversed the trial court.

Henderson v. Commonwealth, 58 Va. App. 363, 710 S.E.2d 482 (2011).  By order of July 26,

2011, this Court granted a petition for rehearing *en banc* and stayed the mandate of the panel

decision pending the decision of the Court *en banc*.  Henderson v. Commonwealth, 58 Va. App.

616, 712 S.E.2d 52 (2011).

We conclude the trial court properly admitted the challenged hearsay evidence in conformity with the limited confrontation right in the Fourteenth Amendment. Accordingly, we vacate the panel opinion and affirm the trial court.

## II. OVERVIEW

In Morrissey v. Brewer, 408 U.S. 471, 480 (1972), the United States Supreme Court held that "the revocation of parole is not part of a criminal prosecution and thus the full panoply of rights due a defendant in such a proceeding does not apply to parole revocations." Nonetheless, that Court continued, a defendant in a parole revocation hearing is entitled to those due process rights contained in the Fourteenth Amendment to the United States Constitution, including "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)."[1] Id. at 489.

The Supreme Court applied the due process guarantees of Morrissey to probation revocation in Gagnon v. Scarpelli, 411 U.S. 778, 786 (1973). Like parole, probation "arises after the end of the criminal prosecution, including imposition of sentence." Morrissey, 408 U.S. at 480. In Scarpelli, the Supreme Court pointedly stressed that: "While in some cases there is simply no adequate alternative to live testimony, we emphasize that we did not in Morrissey intend to prohibit use where appropriate of the conventional substitutes for live testimony, including affidavits, depositions, and documentary evidence." 411 U.S. at 782 n. 5.

Following these decisions, this Court has developed its own jurisprudence, specifically addressing the hearsay issue.

In Davis v. Commonwealth, 12 Va. App. 81, 84, 402 S.E.2d 684, 686 (1991), we wrote:

> We first address Davis' contention that White's testimony
> was hearsay and improperly admitted at the probation revocation
> hearing. Both the United States Supreme Court and this Court
> have previously indicated probation revocation hearings are not a

---

[1] At oral argument, Henderson's counsel agreed that Morrissey remains good law.

stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution. See Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 480 (1972); Atkins v. Commonwealth, 2 Va. App. 329, 331-32, 343 S.E.2d 385, 387 (1986). Specifically, the United States Supreme Court has stated that in revocation hearings "formal procedures and rules of evidence are not employed," Scarpelli, 411 U.S. at 789, and that the process of revocation hearings "should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial." Morrissey, 408 U.S. at 489. Thus, hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted into evidence in a revocation hearing *based on the court's discretion*.

(Emphasis added).

After quoting Davis, we held in Hess v. Commonwealth, 17 Va. App. 738, 742, 441 S.E.2d 29, 32 (1994), that: "Consequently, a probation officer can, and frequently does, give hearsay evidence that includes a summary of a crime victim's testimony from another trial *or even an extra-judicial account concerning a probationer's conduct*." (Emphasis added). See also Dickens v. Commonwealth, 52 Va. App. 412, 663 S.E.2d 548 (2008).[2]

Succinctly stated, the due process right of confrontation contained in the Fourteenth Amendment is applicable in probation revocation hearings, but the scope of that right is not one congruent with that afforded by the Sixth Amendment in criminal trials.[3]

---

[2] To review decisions from other jurisdictions, see Annotation, Admissibility of Hearsay Evidence in Probation Revocation Hearings, 11 A.L.R.4th 999 (1982 & Supp. 2011).

[3] We note that Henderson did not in the trial court, before the panel, or before the Court *en banc*, maintain any violation of his Sixth Amendment rights, or assert such a right was applicable to revocation hearings. At oral argument, Henderson's counsel agreed the Sixth Amendment does not apply.

## III. STANDARD OF REVIEW

We thus address whether good cause existed for the admissibility of the challenged hearsay and whether that admission violated Henderson's Fourteenth Amendment due process right of confrontation.[4]

Whether Henderson's "due process right of confrontation was violated is a question of law and is reviewed *de novo*." Dickens, 52 Va. App. at 417, 663 S.E.2d at 550 (citing Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006)).  That said, the core issue before us is whether there was good cause, consistent with Morrissey, for admission of the challenged testimony.  The question of good cause, and thus the propriety of that admission, is reviewed upon an abuse of discretion standard.

In Allen v. Commonwealth, 58 Va. App. 618, 622-23, 712 S.E.2d 748, 750 (2011), we wrote:

> The underlying determinations of good cause . . . involve a case-by-case exercise of the trial court's discretion.  See Dickerson v. Commonwealth, 29 Va. App. 252, 254, 511 S.E.2d 434, 435-36 (1999); Adkins v. Commonwealth, 24 Va. App. 159, 162-63, 480 S.E.2d 777, 779 (1997).  On appeal, we do not review these decisions *de novo* but rather under the deferential abuse-of-discretion standard.  "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." Grattan v. Commonwealth, 278 Va. 602, 620, 685 S.E.2d 634, 644 (2009) (quoting in parenthetical Thomas v. Commonwealth, 44 Va. App. 741, 753, 607 S.E.2d 738, 743 (2005)).

That standard of review is applicable to decisions of trial courts as to the admissibility of evidence.  Avent v. Commonwealth, 279 Va. 175, 197, 688 S.E.2d 244, 256 (2010); Beck v. Commonwealth, 253 Va. 373, 385, 484 S.E.2d 898, 906 (1997); Burton v. Commonwealth, 58

---

[4] We note that Henderson has not preserved for appeal the issue of whether a trial court is required to enunciate on the record a finding of "good cause," or the reasoning leading to such a finding.  See Morrissey, 408 U.S. at 489 (holding a defendant is entitled to confrontation "unless the hearing officer specifically finds good cause").  Accordingly, we do not address such an issue.

- 4 -

Va. App. 274, 280, 708 S.E.2d 444, 447 (2011); <u>Lampkin v. Commonwealth</u>, 57 Va. App. 726, 728, 706 S.E.2d 51, 52 (2011). And as we wrote in <u>Joyce v. Commonwealth</u>, 56 Va. App. 646, 663, 696 S.E.2d 237, 245 (2010): "Whether an adequate foundation has been laid for a hearsay exception involves an exercise of discretion by the trial court. <u>See, e.g.</u>, <u>Abney v. Commonwealth</u>, 51 Va. App. 337, 347, 657 S.E.2d 796, 801 (2008)."

## IV. TESTS FOR DETERMINING HEARSAY ADMISSIBILITY

Courts have developed two tests for evaluating whether good cause exists for the admission of hearsay evidence in probation revocation hearings—the reliability test and the balancing test.

Under the reliability test, a court "allows the admission of hearsay evidence without a showing of cause for the declarant's absence if the evidence is sufficiently reliable." <u>Curtis v. Chester</u>, 626 F.3d 540, 545 (10th Cir. 2010). Reliable evidence under this test has also been described as evidence having "substantial guarantees of trustworthiness." <u>Egerstaffer v. Israel</u>, 726 F.2d 1231, 1234 (7th Cir. 1984). "The [Supreme] Court established the good cause showing in <u>Morrissey</u> to limit the substantive use of unreliable evidence at revocation hearings. However, if the proffered evidence itself bears substantial guarantees of trustworthiness, then the need to show good cause vanishes." <u>Id.</u> Another court explained that substantial trustworthiness in hearsay evidence represents good cause for not producing live testimony. <u>Reyes v. State</u>, 868 N.E.2d 438, 441-42 (Ind. 2007). "In other words, if reliable hearsay is presented, the good cause requirement is satisfied." <u>Commonwealth v. Negron</u>, 808 N.E.2d 294, 300 (Mass. 2004).

Courts have considered a number of factors in determining whether hearsay evidence is reliable. Courts are often concerned with whether other evidence corroborates the hearsay. <u>United States v. Rondeau</u>, 430 F.3d 44, 48 (1st Cir. 2005); <u>United States v. Martin</u>, 382 F.3d 840, 846 (8th Cir. 2004); <u>Egerstaffer</u>, 726 F.2d at 1235. Another indication of reliability is that the

evidence is "quite detailed," providing "a fairly full account of the circumstances." Crawford v. Jackson, 323 F.3d 123, 130 (D.C. Cir. 2003); see also United States v. Chin, 224 F.3d 121, 124 (2d Cir. 2000); Egerstaffer, 726 F.2d at 1235. Also relevant are admissions from the defendant corroborating the challenged hearsay, the failure of the defendant to present evidence, and internal corroboration within the hearsay. Crawford, 323 F.3d at 130. Statements possess less reliability when they come from an adversarial relationship between the person reporting the statement and the person who made it, United States v. Bell, 785 F.2d 640, 644 (8th Cir. 1986), when they represent "self-serving statements," Farrish v. Miss. State Parole Bd., 836 F.2d 969, 978 (5th Cir. 1988), or when they contain multiple levels of hearsay, United States v. Lloyd, 566 F.3d 341, 345 (3d Cir. 2009).

Under the balancing test, a court weighs a defendant's "interest in confronting a particular witness against the government's good cause for denying it, particularly focusing on the indicia of reliability of a given hearsay statement." United States v. McCormick, 54 F.3d 214, 221 (5th Cir. 1995); see also United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006). Reliability constitutes "a principal factor" in this analysis. Lloyd, 566 F.3d at 345.

"Whether a particular reason is sufficient cause to outweigh the right to confrontation will depend on the strength of the reason in relation to the significance of the releasee's right." United States v. Comito, 177 F.3d 1166, 1172 (9th Cir. 1999). Although occasionally a defendant's "interest in confrontation may be overwhelmed by the hearsay's reliability such that the Government need not show cause for a declarant's absence," typically a defendant "may have a legitimate interest in confrontation and cross-examination even when a declarant's out-of-court statement bears some indicia of reliability, and [trial] courts should normally address both factors." Lloyd, 566 F.3d at 345. "Courts have recognized that a declarant's refusal to testify or threats made against a declarant may be good cause for his absence and

- 6 -

justify the admission of hearsay." Id. at 346. Where it is clear that a witness is unavailable, a court applying the balancing test should simply determine whether the evidence is reliable. United States v. Farmer, 567 F.3d 343, 347 (8th Cir. 2009).

While it is arguable that Virginia has adopted the reliability test, see, e.g., Turner v. Commonwealth, 278 Va. 739, 742, 685 S.E.2d 665, 667 (2009); Dickens, 52 Va. App. at 423, 663 S.E.2d at 553, both cases dealt with documentary evidence and not, as here, with testimony.

We decline to determine whether either test, or both tests, or other methods of analysis are mandatory in evaluating good cause for the admission of hearsay in probation revocation hearings. With that caveat, and because the parties here have only addressed the reliability test and the balancing test for determining good cause, the scope of our opinion will be likewise limited to the application of those tests to the instant facts. We hold that under either test, the challenged testimony was admissible.

## V. BACKGROUND

In 2001, Henderson was convicted of a robbery that occurred in 2000 in violation of Code § 18.2-58. In addition to an active period of incarceration, he received a substantial suspended sentence, along with supervised probation upon release. Henderson was released from incarceration in September 2009 and placed on supervised probation.

On February 26, 2010, Henderson appeared in court on allegations of probation violation. The Commonwealth called only one witness, Detective Rosa Ortiz of the Arlington County Police Department, who testified regarding two incidents concerning Henderson. Over Henderson's objection, much of the evidence Ortiz offered involved hearsay.

The first incident concerned an attempted robbery occurring on October 2, 2009. Ortiz spoke with the victim and his daughter on October 6. Other officers had already conducted a preliminary investigation.

The victim reported he received a phone call from an unknown number. The caller pretended to be from the sheriff's office and asked him to go to the courthouse to sign legal documents regarding a family member. When the victim delayed in leaving, he received a second call. He eventually left and was approached by a man who requested a cigarette. As the man passed by, he attempted to steal a bag held by the victim. The victim resisted and managed to thwart the robbery.

The victim returned home and reported the incident to the police. When his daughter returned home, she attempted to save the phone number in her own phone; however, her phone identified the number as belonging to Henderson. The daughter contacted Henderson, who agreed to meet with the victim and his daughter. Henderson told them "he lends his phone to a lot of people and he [did not] remember who he loaned it to that day." Ortiz contacted Henderson, who told her "basically the same thing." The victim told Ortiz "he really didn't want to file charges because people knew his daughter, and they all were in the neighborhood, they live in the same neighborhood, they knew where he lived." Henderson was not charged in connection with this incident.

On October 8, Ortiz "received a phone call at night at my house to come in to investigate a home invasion robbery." When she arrived at the police station, she interviewed the victim, who reported three individuals participated in a robbery at his house. The trio knocked on the door, but the victim declined to answer when he looked through a window and learned their identities. Nonetheless, they entered the home through an unlocked front door. The first person to enter had a gun in his waistband. Henderson was the second person and was followed by another man. The group stole property from the residence. The robbery occurred around 11:00 p.m. The victim identified Henderson by name and picked out his photo from a lineup.

The victim had previously met Henderson at a probation office. The victim had several prior larceny convictions and had agreed to plead guilty to grand larceny.

Henderson spoke with Ortiz after being arrested for this crime. Regarding the prior attempted robbery incident, Henderson stated during this interview "that his phone was stolen and miraculously it appeared on his porch two days later." He told her "that the people in the neighborhood simply didn't like him, and that's why his name came up on these two different cases." When Ortiz inquired why people would not like him, Henderson responded that "they just don't." Henderson mentioned the second victim "as the victim of a home invasion, and being one of the people that don't like him just because he had an issue with his brother." Henderson related that on the day of the incident he was on his porch talking to others between 8:00 p.m. and midnight.

During the home invasion investigation, the police obtained a search warrant for Henderson's house. Henderson's stepfather told the police that Henderson "was not there the day of the incident . . . that they had been having a lot of problems with him listening . . . to what he needs to do, and that he stays out all night."

Henderson admitted to Ortiz that he knew the other two perpetrators of the home invasion robbery and that he had been in a car with them. When police searched the car, they discovered property of the victim.

Ortiz later monitored phone calls of Henderson and the other two perpetrators of the home invasion made from the jail. The gunman told Henderson's brother "to take [the victim's] stuff out of your house." The gunman made "a lot of threats towards the victim." The gunman eventually arranged to return the victim's property by way of two other people. Henderson stated the home invasion victim "pulled a knife on Martin" and "should go to jail." At another

point, the gunman stated: "[T]hey got me and they got Terrence. And he asked how did they get Martin."

The home invasion victim ultimately refused to testify about the incident. Ortiz testified: "I actually personally met with him and his mother, and they were extremely scared of retaliation. My victim's mother . . . the day before the court she heard gunshots around the house, and that really scared her." The charge was *nolle prosequied*.

Henderson presented the testimony of his mother. She stated that when she arrived home at 10:20 p.m. the night of the home invasion robbery, Henderson was in his room and did not leave the house that night.

The trial court found Henderson in violation of his probation and sentenced him to serve the entirety of the suspended sentence from the 2001 robbery conviction. Henderson appealed to this Court, arguing the trial court violated his confrontation rights under the Due Process Clause of the Fourteenth Amendment by admitting hearsay. A panel majority reversed the trial court, and we granted the Commonwealth's petition for rehearing *en banc*.

## VI. APPLICATION

Initially, we note the limited scope of the hearsay Henderson challenges. Henderson challenges the admissibility of Ortiz's testimony regarding the statements of the victim of the attempted robbery and his daughter, as well as the statements of the victim of the home invasion robbery. He does not dispute the admissibility of any other hearsay relayed by Ortiz.

### A. Reliability Test

Before we analyze the facts of this case under the reliability standard, we find it useful to consider how other courts have applied the reliability standard under similar facts. The Court shall then discuss how the hearsay concerning each incident possesses substantial indicia of reliability.

In <u>Crawford</u>, 323 F.3d at 124, the court affirmed a parole revocation based solely on a police investigative report. A woman's complaint led to Crawford's arrest for aggravated assault. <u>Id.</u> At a parole revocation hearing, a single police report of the incident (also relating drug use by Crawford) was admitted and parole was revoked based on it. <u>Id.</u> at 124-25. On appeal, Crawford raised similar arguments as in this case, challenging the "exclusive reliance on the police investigative report . . . inasmuch as it is unsworn, prepared months after relevant events, and apparently consisted not of the author's personal observations or conversations with the complainant but instead was a summary of an affidavit prepared by another police officer." <u>Id.</u> at 127. Crawford also noted that the assault charge was never prosecuted and his arrest record was expunged. <u>Id.</u> at 127-28.

In spite of the minimal amount of evidence and the fact that Crawford was never prosecuted, the court found the police report sufficiently reliable to revoke parole. Enunciating the reliability standard, the court stated that hearsay evidence could be relied upon where it possessed "sufficient indicia of reliability under the circumstances at hand to protect the prisoner's due process rights." <u>Id.</u> at 129. First, the court noted the report was "quite detailed, an indicia of reliability." <u>Id.</u> at 130. Second, the court found important that Crawford did not dispute a large portion of the relevant facts. <u>Id.</u> Third, the court stated the report contained internal corroboration because it included information from sources other than the complainant. <u>Id.</u> A responding officer observed evidence inconsistent with Crawford's story, and Crawford's "far-fetched explanation" gave "reasonable cause for the Board to doubt his denial of culpability." <u>Id.</u> Fourth, Crawford failed to present any evidence contesting his guilt. <u>Id.</u> Finally, claimed multiple levels of hearsay were not significant under the facts of the case. <u>Id.</u> at 130-31.

Another case demonstrating application of the reliability standard is United States v. Kelley, 446 F.3d 688 (7th Cir. 2006). There an officer responded to a report about a person with a gun. Id. at 689. The victims told the officer Kelley had punched them and displayed a rifle he retrieved from the trunk of his car. Id. at 690. The officer observed that one of the victims had a broken tooth. Id. Later, the officer searched Kelley's vehicle and discovered a rifle. Id. Although the officer lacked personal knowledge of the incident related by the victims, he testified about their account at a revocation hearing and the court found Kelley in violation of his supervised release. Id. On appeal, Kelley argued the trial court erred in admitting the victims' hearsay statements. Id. at 692. Applying the reliability standard, the court affirmed, holding the victims' hearsay "bore substantial indicia of reliability" since "[t]he physical evidence and the officer's personal observations and investigation corroborated the [victims'] accusations." Id.

### Attempted Robbery Incident

The first way the evidence concerning this incident possesses reliability is that it contains a detailed account given to Detective Ortiz. Lloyd, 566 F.3d at 345; Crawford, 323 F.3d at 130; Egerstaffer, 726 F.2d at 1235. Ortiz spoke to both the victim and his daughter. The victim related how he received a phone call from an unfamiliar number. The caller pretended to be from the sheriff's office and requested the victim to go to the office to sign documents about a family member. When the victim did not immediately exit, the caller phoned him again. Upon the victim leaving, a man approached the victim and asked for a cigarette. The man then attempted to take a bag from the victim, but was unsuccessful as the victim resisted. The victim reported the incident to the police. When his daughter requested to see the telephone number of the person who had called, she realized it was the phone number for Henderson. The victim and his daughter spoke with Henderson, who told them "he lends his phone to a lot of people" and he did not "remember who he loaned it to that day."

Second, Henderson's story corroborated what the victim and his daughter reported. Crawford, 323 F.3d at 130; United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982). Detective Ortiz spoke with Henderson about this incident, and Henderson related "basically the same thing" as he had told the victim and his daughter. During another interview, Henderson stated "that his phone was stolen and miraculously it appeared on his porch two days later." While these statements do not corroborate the remainder of the story of the victim and his daughter, "[n]ot every detail . . . need be corroborated to establish the reliability." Cf. Farmer, 567 F.3d at 348.

Third, Henderson's statements gave ample cause to doubt his credibility and believe his culpability. Crawford, 323 F.3d at 130; see also Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004) ("A false or evasive account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge."). Henderson recounted different stories regarding his involvement. He told the victim and Ortiz he had loaned his phone on the day in question, but did not remember who borrowed it. At another time, Henderson told Ortiz someone had stolen his phone, but it incredibly "appeared on his porch two days later." The inconsistencies in Henderson's accounts and especially his story about his magically disappearing/reappearing phone provided "reasonable cause . . . to doubt his denial of culpability." Crawford, 323 F.3d at 130.

Fourth, Henderson failed to present any evidence to contradict the Commonwealth's evidence at this revocation hearing. Id. (finding important that "despite the obvious incentive to present supporting evidence, [the defendant] did not call any witness or present evidence other than his own testimony to support his version of events"); United States v. Waters, 158 F.3d 933, 941 (6th Cir. 1998) (finding relevant that while the defendant argued his inability to cross-examine a hearsay declarant prevented the defendant from establishing his brother

participated in illegal conduct, the defendant "presented no evidence suggesting that his brother rather than he initiated contact"); see also United States v. Minnitt, 617 F.3d 327, 334 (5th Cir. 2010) (noting in finding reliability that the defendant "failed to offer any evidence"). Henderson knew the identities of the victim and his daughter. Crawford, 323 F.3d at 130. He knew of the allegations since Ortiz contacted him. Yet he failed to present any contrary evidence at the revocation hearing. Rather, Henderson admitted another person could have used his phone to attempt the robbery.

Fifth, it is notable that Ortiz spoke with the victim and his daughter soon after the incident. Only four days passed between the attempted robbery and the interview with Ortiz. The brevity of this period enhances reliability. See Page v. Clopton, 71 Va. (30 Gratt.) 415, 430 (1878) (holding that after a period of five days "the facts were no doubt firmly impressed on his mind and fresh in his recollection"); see also People v. Androvett, 522 N.Y.S.2d 218, 220-21 (N.Y. App. Div. 1987) ("The lineup was conducted within four days of the crime while the witness's memory was still fresh . . . ."); Jackson v. State, 338 So. 2d 231, 232 (Fla. Dist. Ct. App. 1976) ("In view of the fact that the victim herein observed her assailant . . . only nine days later while her memory was still fresh, there is little room for doubt that the identification of the defendant was correct."). Moreover, the victim and his daughter had already reported the incident to police officers before speaking with Ortiz. Their quick report supports reliability. Cf. Herron v. Commonwealth, 208 Va. 326, 330, 157 S.E.2d 195, 198 (1967).

Sixth, a large portion of the victims' statements did not concern Henderson. That the victims limited their statements concerning Henderson tends to enhance their credibility since it shows they did not deliberately structure their statements to implicate Henderson. Cf. Monroy v. City of Los Angeles, 78 Cal. Rptr. 3d 738, 753 (Cal. Ct. App. 2008) (stating that "credibility may be enhanced when a defense expert agrees with a plaintiff's expert").

Finally, the victim and his daughter would be subject to criminal liability if they made a false report to the police. Code § 18.2-461. This increases their reliability. See Beckner v. Commonwealth, 15 Va. App. 533, 535, 425 S.E.2d 530, 532 (1993).

### Home Invasion Robbery

Regarding the second incident, the victim told Ortiz that several men came to his door at night and knocked on the door, but the victim did not open it because he saw who was there. The men entered the door, which was unlocked, and stole property. The first person to enter possessed a gun in his waistband. The victim identified Henderson as the second person to enter.

Unlike the first incident, the story related here is not detailed. Rather, it is simply a statement that several people knocked on the victim's door, entered without permission, and took property. It is true that a lack of detail diminishes reliability. Furthermore, the victim had several prior larceny convictions and had agreed to plead guilty to grand larceny, which again makes his story less reliable.

That said, other evidence presented significantly corroborated the victim's account to make the story reliable. See Rondeau, 430 F.3d at 48; see also United States v. Pratt, 52 F.3d 671, 675 (7th Cir. 1995).

First, Henderson and an accomplice made incriminating statements about Henderson's involvement. During a police interview, Henderson admitted he knew the other perpetrators of the robbery. He also admitted he had been in a car with them. A search of the car from a warrant discovered property belonging to the victim. During a monitored telephone conversation, the gunman from the robbery said "they got me and they got [Henderson]."

Second, other monitored telephone calls plainly established the fact that the robbery occurred. It was learned that some of the victim's property was in the house of Henderson's brother. The gunman instructed the brother to remove the property. The gunman made

numerous threats towards the victim. The gunman eventually arranged to return the stolen property to the victim. Although this evidence does not necessarily indicate Henderson's involvement, it proves another fact crucial to the case: the existence of a robbery involving the victim.

Third, the monitored telephone conversations provided evidence of a motive. At one point, Henderson stated the victim "pulled a knife on Martin" and the victim "should go to jail." In another conversation, the gunman, immediately after stating "they got me and they got [Henderson]" for the robbery, "asked how did they get Martin." Thus, it may be inferred that Martin was the third participant in the robbery, that Henderson shared Martin's unfavorable relationship with the victim, and that Henderson acted upon these sentiments by participating in the robbery. The robbery may have been in retaliation for the victim pulling a knife on Martin, or an act of aggression against someone the perpetrators did not like.

Fourth, Henderson provided evasive explanations to Ortiz and the court could make an incriminating inference from this. Crawford, 323 F.3d at 130; Covil, 268 Va. at 696, 604 S.E.2d at 82. Henderson first told Ortiz "that the people in the neighborhood simply didn't like him, and that's why his name came up on these two different cases." When Ortiz inquired further about why people did not like him, Henderson stated "they just don't." Henderson then mentioned the victim of the home invasion as "being one of the people that don't like him just because he had an issue with his brother." The trial court could infer a desire to conceal the truth from Henderson's implausible claim that he was identified as a robber simply because of a general dislike for him in the community. Moreover, by Henderson specifically mentioning the robbery victim as a person who disliked him, the trial court could infer Henderson's involvement in the robbery and a desire to discredit the victim.

Fifth, the court could again make an incriminating inference from Henderson's statements regarding his whereabouts the night of the robbery. Henderson told Ortiz that on the night of the incident, he was on his porch talking with others between 8:00 p.m. and midnight. Yet at the hearing, Henderson presented the testimony of his mother, who stated that when she arrived home at 10:20 p.m., Henderson was in his room and did not leave the house that night. Furthermore, when police searched Henderson's house, they were told that Henderson "was not there the day of the incident." The court could choose to believe that Henderson and his mother were seeking to conceal his guilt and regard this as additional proof of culpability.

Sixth, it is notable that the victim reported the robbery soon after it was alleged to have occurred. Ortiz testified she was called "at night at my house to come in to investigate a home invasion robbery." This tends to support reliability. Cf. Herron, 208 Va. at 330, 157 S.E.2d at 198.

Seventh, the victim would have been subject to criminal liability for filing a false report. Code § 18.2-461. This increases a complainant's reliability by attaching a penalty to misleading police. See Beckner, 15 Va. App. at 535, 425 S.E.2d at 532.

Taken together, the evidence revealed a reliable account of a robbery involving Henderson. While the victim's story standing alone would not support a reliability finding, the other evidence, including statements by Henderson, provided a reliable history.

## B. Balancing Test

### Attempted Robbery Incident

In considering whether the government had shown adequate reasons for not producing the victims of this incident to testify, persuasive are Henderson's admissions corroborating the victims' accounts and the fear of retribution for testifying.

In Bell, 785 F.2d at 644, the court held admission of police reports proper without the officers' presence where the defendant partially corroborated the reports. The police reports detailed an occasion where police arrested Bell for driving while intoxicated, possessing marijuana, and possessing narcotic paraphernalia. Id. at 642. Bell admitted "that he was driving on a public highway in the middle of the night without his lights on, and that he had been drinking." Id. at 644. While acknowledging that drinking does not establish intoxication, the court found this corroboration sufficient to justify admitting the police reports without confrontation. Id. The court held that in light of "all of these reports and . . . the force of Bell's own concessions, we are morally certain that no substantial purpose would have been served by requiring the officers' personal presence." Id. The court continued by stating that the officers "would simply have repeated what is in the reports, and none of the contentions made by Bell at his revocation hearing indicates that he would have been able to shake their account in any substantial way." Id. This was also in spite of the fact that Bell apparently made no admissions concerning his arrest for drugs. Id.

In United States v. Jones, 299 F.3d 103 (2d Cir. 2002), the court held it proper to consider fear or risk of retaliation under circumstances relevant to this case. Jones was on supervised release after having been convicted of participating in a racketeering enterprise. Id. at 105. Through hearsay testimony of an officer, the government presented evidence that Jones had been standing in the doorway of an apartment building while masturbating and making sexual remarks to a fifteen-year-old girl. Id. at 107. The hearsay declarants were the wife of the officer and the young girl. Id. The girl told the officer "she was scared" from the incident. Id. After Jones was arrested that day, he told the officer "it's not over. Okay. I'll get you." Id. In assessing whether the government presented sufficient reasons for denying confrontation, the court found "with

- 18 -

regard to both eyewitnesses, Jones's history of violent conduct made reprisal against them a possibility." Id. at 113.

With respect to the attempted robbery incident, Henderson's admissions alone justified the admission of hearsay. The only part of the hearsay concerning Henderson was the use of his phone to set up the attempted robbery, which he admitted was possible. Although this does not corroborate the remainder of the account, it is a significant piece of evidence. Furthermore, it is unclear how Henderson would impeach the hearsay declarants or how any changes in the victims' account would affect Henderson since only his phone was involved. Under Bell, the corroboration provided is adequate.

Yet Henderson's corroborating statements did not represent the only basis for admission, for the potential threat to the victim and his daughter also provided a ground to excuse their presence. Ortiz testified that the victim "explained to me he really didn't want to file charges because people knew his daughter, and they all were in the neighborhood, they live in the same neighborhood, they knew where he lived." Obviously, the victim was afraid of retaliation if charges went forward. Like the defendant in Jones, Henderson had a history of violent conduct, i.e., the robbery he committed in 2000 and the home invasion robbery from this case. This represented substantial ground to believe retaliation was possible. Moreover, the victim's daughter was familiar with Henderson. Henderson's involvement was discovered because the daughter recognized his phone number. She knew Henderson by his first name and had him come to her residence to discuss the incident. As such, it is likely she was familiar with Henderson's personality and his propensity for violence. This gives additional weight to the victim's fear.

For the reasons already discussed above, the hearsay was clearly reliable. Thus, the hearsay at issue meets the requirements of the balancing test.

Under facts and arguments extremely similar to this incident, the court in <u>Martin</u> held the

hearsay was admissible. The court held:

> In the present case, Martin argues that the government has
> failed to adequately explain its failure to present Garcia's live
> testimony. Martin points out that, although Sperando did testify
> regarding Garcia's refusal to testify against Martin in state court,
> those state court proceedings occurred more than a year before the
> revocation hearing and yet, since those state court proceedings, the
> government had made no attempt to interview or subpoena Garcia.
> Moreover, Martin contends, there has been no showing that
> Garcia's alleged reason for refusing to testify (i.e., her fear of
> retaliation by a "crime family") is well-founded. Consequently,
> Martin argues, the government has failed to show that the burden
> of producing Garcia's live testimony is inordinate.

> \*     \*     \*     \*     \*     \*     \*

> In the present case, the government did offer an explanation
> for why the burden of producing Garcia as a live witness would be
> inordinate. The government presented evidence that Garcia
> repeatedly stated that she would not testify against Martin and that,
> when Garcia was subpoenaed to testify against Martin in state
> court, she appeared in court but refused to testify. The government
> believed that Garcia likewise would not testify against Martin at
> his supervised release revocation hearing and that serving her with
> a subpoena would be futile. The government also demonstrated
> that the hearsay evidence was reliable. . . .

> [W]e hold that the government met its burden to show good
> cause for not producing Garcia as a live witness at the revocation
> hearing.

382 F.3d at 845-46 (citation omitted).

Like <u>Martin</u>, the Commonwealth plainly demonstrated here that the victim refused to

testify from fear of retaliation. The following dialogue occurred during the hearing:

> [Prosecutor]: Would it be fair to say ultimately, Detective Ortiz,
> that the victim . . . refused to come to court and to testify to the
> circumstances of the home invasion?

> [Ortiz]: Yes. I actually personally met with him and his mother,
> and they were extremely scared of retaliation. My victim's mother

> . . . she basically said she – the day before the court she heard
> gunshots around the house, and that really scared her.

A charge was filed against Henderson in connection with the robbery, but was *nolle prosequied* when the victim refused to testify. Such fear was justified, for Ortiz testified that in monitored phone conversations the gunman made "a lot of threats towards the victim."

Based on this evidence, the Commonwealth showed the victim refused to testify from fear of Henderson or his accomplices. Considering that in a previous proceeding the Commonwealth was forced to *nolle prosequi* a charge because of the victim's refusal to testify, there is no reason to believe a different result would occur at a revocation hearing. Id. at 846. As such, the only inquiry was whether the evidence was reliable. Farmer, 567 F.3d at 347. For the reasons detailed above, it was reliable.[5]

---

[5] We address the dissent in this footnote.

Initially, we note the dissent assumes a premise unsupported by the record. That premise is that Henderson preserved for appeal the issue of whether a trial court is required to enunciate on the record a finding of "good cause" and/or the reasoning leading to such a finding. The issue of whether a trial court must explicitly find good cause on the record is separate from the issue of whether the trial court abused its discretion in finding good cause.

Preservation requires, quoting the relevant portion of then Rule 5A:18, that an objection be "stated together with the grounds therefor at the time of the ruling." Those grounds "'must be . . . stated with specificity.'" Kovalaske v. Commonweath, 56 Va. App. 224, 229, 692 S.E.2d 641, 645 (2010) (quoting McDuffie v. Commonwealth, 49 Va. App. 170, 177, 638 S.E.2d 139, 142 (2006)). Rule 5A:18 "'require[s] that objections be promptly brought to the attention of the trial court with sufficient specificity that the alleged error can be dealt with and timely addressed and corrected when necessary.'" Bazemore v. Commonwealth, 42 Va. App. 203, 218, 590 S.E.2d 602, 609 (2004) (*en banc*) (quoting Brown v. Commonwealth, 8 Va. App. 126, 131, 380 S.E.2d 8, 10 (1989)). We have recently emphasized these requirements of Rule 5A:18. See Dickerson v. Commonwealth, 58 Va. App. 351, 355-56, 709 S.E.2d 717, 719 (2011); Scott v. Commonwealth, 58 Va. App. 35, 44, 707 S.E.2d 17, 22 (2011).

As we held in Andrews v. Creacey, 56 Va. App. 606, 635-36, 696 S.E.2d 218, 232 (2010), a general objection "by appellant was insufficient to alert the trial court that she was objecting to the court's failure to [explicitly] consider the factors enumerated." A general objection to purported inadmissible hearsay testimony, as here in issue, does not suffice.

To be sure, had the trial record contained any reference whatsoever as to an objection based upon the failure of the trial court to enunciate a finding of "good cause," the dissent would have quoted the same. Given that absence, the dissent creates a startling proposition: because a trial judge is presumed to know the law, a trial judge may err when that judge fails to rule upon an issue never presented for consideration. In short, the dissent maintains that a trial judge must

address grounds for an objection *that could have been or might have been* raised by a litigant. Such logic does not just ignore the strictures of Rule 5A:18; it eviscerates that Rule. Here, as we noted in footnote 4, the issue of enunciating "good cause" was never raised in the trial court.

Nor was that issue an assignment of error. The first sentence of this majority opinion recited the assignment of error. We here repeat it: "The trial court violated [his] right of confrontation by admitting . . . hearsay testimony."

Rule 5A:12(c)(1)(i) states in part: "Only assignments of error assigned in the petition for appeal will be noticed by this Court." See also McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999) (*en banc*). "The purpose of assignments of error is to point out the errors with reasonable certainty in order to direct this court and opposing counsel to the points on which appellant intends to ask a reversal of the judgment, *and to limit discussion to these points*." Harlow v. Commonwealth, 195 Va. 269, 271, 77 S.E.2d 851, 853 (1953) (emphasis added).

In reversing this Court, the Virginia Supreme Court agreed that "an appellate court may not 'recast' an argument made in a lower court into a different argument upon which to base its decision." Clifford v. Commonwealth, 274 Va. 23, 25, 645 S.E.2d 295, 297 (2007); see also Commonwealth v. Brown, 279 Va. 235, 240, 687 S.E.2d 742, 745 (2010). And as is here pertinent we quote the following:

> Our system of appellate review requires the litigants to place before the reviewing court the issues that are the subject of the appeal. It is not proper for an appellate court to intervene on behalf of a particular party and reframe an issue to help their cause; such action violates a basic premise that American courts act as neutral arbiters.

Moore v. Commonwealth, 276 Va. 747, 761, 668 S.E.2d 150, 158 (2008) (Lemons, J., dissenting).

The dissent assumes that the failure to enunciate good cause is assigned as error. It plainly was not. And by addressing that issue the dissent ignores Rule 5A:12(c)(1)(i) and the jurisprudence it has generated.

Moreover, Rule 5A:20(e) requires that an appellant's opening brief contain "[t]he standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Assertions of error unsupported by authority "do not merit appellate consideration." Buchanan v. Buchanan, 14 Va. App. 53, 56, 415 S.E.2d 237, 239 (1992); see also Reid v. Commonwealth, 57 Va. App. 42, 48, 698 S.E.2d 269, 271 (2010); Atkins v. Commonwealth, 57 Va. App. 2, 20, 698 S.E.2d 249, 258 (2010). As counsel conceded in oral argument, the issue of whether a trial court had a duty to make express findings on the record in support of a good cause determination was never raised in Henderson's petition for appeal, in the opening brief before the three-judge panel, or in the opening brief *en banc*. Thus, no authority addressing that issue has ever been presented to any court, as required by Rule 5A:20(e).

The dissent, in addressing the actual assignment of error, concludes the trial court erred "in failing to permit Henderson to confront and cross-examine the witness." This assertion begs the question ("*petito principii*"). It is the logical fallacy in which the proposition to be proven is assumed in the premise. As we wrote above, while we do review due process implications as a matter of law *de novo*, the core issue before us is not whether Henderson was denied confrontation; rather, the issue is whether there was good cause for the admission of the

## VII. CONCLUSION

In review of this probation revocation hearing, we hold the trial court did not abuse its discretion in admitting the challenged hearsay testimony, there being good cause for its admission. The admission did not violate Henderson's Fourteenth Amendment due process right of confrontation. The judgment of the trial court is affirmed.

Affirmed.

---

challenged evidence. As we have pointed out, the question of the existence of good cause, and thus the propriety of that admission, is reviewed upon an abuse of discretion standard. *It is "[o]nly when reasonable jurists could not differ can we say an abuse of discretion has occurred."* Grattan, 278 Va. at 620, 685 S.E.2d at 644 (emphasis added) (citation omitted). The majority does not find such an abuse here occurred, and thus we differ from the dissent.

The dissent urges us to adopt the "balancing test" as the proper measure of good cause. We specifically chose not to adopt any specific test as that measure. We note that Federal Rule of Criminal Procedure 32.1(b)(2)(C), which codified the Morrissey "good cause" test, likewise makes no such choice. In revocation hearings, a respondent is granted "[a]n opportunity to . . . question any adverse witness unless the court determines that the interest of justice does not require the witness to appear." Fed. R. Crim. P. 32.1(b)(2)(C). And, as have we, the federal appellate courts apply an abuse of discretion standard in their analysis. See, e.g., United States v. Black Bear, 542 F.3d 249, 255 (8th Cir. 2008); United States v. Ray, 530 F.3d 666, 667-68 (8th Cir. 2008); Williams, 443 F.3d at 46.

Again in its conclusion, the dissent maintains that because Crawford v. Washington, 541 U.S. 36 (2004), has "altered the Sixth Amendment Confrontation Clause landscape" in criminal trials, we should apply the principles therein enumerated to revocation hearings. But the dissent earlier acknowledged that "the Sixth Amendment is not at issue in this case." And, as we pointed out in our footnote 3, Henderson has never asserted any Sixth Amendment right and at oral argument *en banc* counsel agreed the Sixth Amendment does not apply.

The dissent maintains the trial court erred for a reason not presented to the trial court for consideration, not assigned as error, and unsupported on brief before this Court by any authority, that is, a failure to enunciate a finding of good cause. Accordingly, we see no need to address that argument. And for that same reason, as set forth in footnote 3, and noted above, we do not address the dissent's assertion of a violation of the Sixth Amendment.

Finally, while respecting the dissent's argument concerning the non-existence of good cause, the majority, also reasonable jurists, differs, and finds that good cause did exist for admission of the challenged testimony.

- 23 -

Petty, J., with whom Elder, J., joins, concurring.

I concur and I join in the majority opinion except as to footnote 5.

Humphreys, J., with whom Alston, J., joins, dissenting.

I respectfully dissent from the judgment and analysis of my colleagues in the majority for two reasons. First, I believe that the circuit court erred in failing to permit Henderson to confront and cross-examine the witnesses accusing him of violating the terms and conditions of his probation or alternatively erred in its failure to find good cause for not doing so. Second, I believe that the courts of the Commonwealth should adopt a balancing test to determine when "good cause" exists for excusing the prosecution from producing such witnesses for cross-examination.

In this case, the Commonwealth asked the circuit court to revoke Henderson's probation based upon his failure to be of good behavior. Henderson was not convicted of any new criminal offenses, nor at the time of the hearing in this case was he even charged with any. In fact, the Commonwealth essentially took the position that Henderson committed new crimes based upon one incident in which no charges were ever brought and a second incident in which the charges were dropped by the Commonwealth. Thus, at no time did those who asserted criminal activity on the part of Henderson testify under oath, much less were they subjected to prior cross-examination concerning their accusations against Henderson.

Instead, the Commonwealth simply called Detective Ortiz as its sole witness, whose testimony was primarily a recitation of the hearsay statements of potential witnesses contained in her investigative report in connection with the two incidents never prosecuted.

I recognize that a probation revocation hearing is not a trial and hearsay is generally admissible at such hearings. I further recognize that generally, "[t]he admissibility of evidence is within the discretion of the trial court, and we review its decision only for abuse of discretion." Dickens v. Commonwealth, 52 Va. App. 412, 417, 663 S.E.2d 548, 550 (2008) (citing Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). "However, whether

- 25 -

appellant's due process right of confrontation was violated is a question of constitutional law and is reviewed *de novo*." Id. (citing Michels v. Commonwealth, 47 Va. App. 461, 465, 624 S.E.2d 675, 678 (2006)).

As the majority has pointed out, "both the United States Supreme Court and this Court have . . . held that probation revocation hearings are not a stage of criminal prosecution and therefore a probationer is not entitled to the same due process protections afforded a defendant in a criminal prosecution." Id. (citing Davis v. Commonwealth, 12 Va. App. 81, 84, 402 S.E.2d 684, 686 (1991)); see also Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Morrissey v. Brewer, 408 U.S. 471, 480 (1972). As such, "the United States Supreme Court has stated that in revocation hearings 'formal procedures and rules of evidence are not employed,' Scarpelli, 411 U.S. at 789, and that the process of revocation hearings 'should be flexible enough to consider evidence . . . that would not be admissible in an adversary criminal trial,' Morrissey, 408 U.S. at 489." Dickens, 52 Va. App. at 421, 663 S.E.2d at 552.

However, "[p]robation revocation, like parole revocation, . . . does result in a loss of liberty. Accordingly . . . a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in Morrissey v. Brewer." Scarpelli, 411 U.S. at 782; see Davis, 12 Va. App. at 84, 402 S.E.2d at 686. Accordingly, the United States Supreme Court held in Morrissey that due process requires that, even in a revocation hearing, the defendant has "the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 U.S. at 489.[6] "Thus, hearsay evidence, which would normally be inadmissible in a criminal trial, may be admitted

---

[6] Virginia cases that cite to Morrissey inexplicably omit the parenthetical language "(unless the hearing officer specifically finds good cause for not allowing confrontation)." 408 U.S. at 489; see Dickens, 52 Va. App. at 417, 663 S.E.2d at 550; Copeland v. Commonwealth, 14 Va. App. 754, 756, 429 S.E.2d 294, 295 (1992).

into evidence in a revocation hearing based on the court's discretion," <u>Dickens</u>, 52 Va. App. at 421, 663 S.E.2d at 552, provided that the circuit court "*specifically finds good cause for not allowing confrontation*," <u>Morrissey</u>, 408 U.S. at 489 (emphasis added).[7]

In this case, I note initially that the circuit court never even addressed the issue of whether "good cause for not allowing confrontation" existed, much less made a specific finding that it did as required by <u>Morrissey</u>, a point simply ignored by the majority. [8]  Moreover, since

---

[7] Because of the majority's insistence on characterizing this issue as one of "Hearsay Admissibility" (see generally section IV of the majority opinion), rather than the due process issue that it is, we have invited confusion of the part of the attorneys and trial judges who expect guidance from this Court.  To at least make my position clear, I acknowledge and agree that hearsay is generally admissible in probation revocation hearings, subject only to the constraints of due process and any statutory requirements.  Thus, non-testimonial hearsay is admissible because it does not implicate any due process confrontation issue while testimonial hearsay is not admissible as it is violative of the Due Process Clause of the Fourteenth Amendment if the record does not reflect "good cause" for the Commonwealth's failure to produce the accuser for cross-examination.

[8] Despite addressing the merits of this issue, the majority nonetheless asserts that Henderson has waived this issue by his failure to object with sufficient specificity.  The basic premise behind the contemporaneous objection requirement of Rule 5A:18 that an objection be made "with reasonable certainty" is to place the court or hearing officer on notice that an error of law will occur or has occurred, in sufficient time to permit corrective action.  <u>See</u> <u>Joyner v. Commonwealth</u>, 10 Va. App. 290, 392 S.E.2d 822 (1990).  While judges may reasonably differ about the degree to which a record reflects that an objection has been made with "reasonable certainty," I do not read either the rule or our jurisprudence interpreting it as requiring more than that a party point to a question, an answer, an exhibit, or as in this case, a witness and advise the court of the basic nature of the asserted error.  <u>See e.g.</u> <u>Hicks v. Commonwealth</u>, 17 Va. App. 535, 538, 439 S.E.2d 414, 416 (1994) ("An objection is sufficient if at the time the ruling or order of the court is made or sought, a party makes known to the court the action which he desires the court to take and his grounds therefor.").

In this case, that was certainly done.  At the revocation hearing, Henderson objected to Detective Ortiz's testimony regarding what third parties told her because "if that hearsay is admitted, that violates his right to confrontation, which he is guaranteed in probation violation proceedings."  I believe that this objection was sufficient to make the circuit court aware of the action Henderson desired the court to take and the grounds therefor.  Moreover, I do not agree with the majority that Henderson was required to specifically assert the failure of the Commonwealth to establish "good cause."  <u>Morrissey</u> makes it clear that it was the Commonwealth's burden to establish "good cause" if it was not willing to produce Henderson's accusers, not Henderson's burden to establish the lack of it.  Not only did the Commonwealth fail to assert any reason at all for its failure to produce the witnesses, the prosecutor incorrectly contended that the right of confrontation simply did not apply at all to a revocation hearing and

the United States Supreme Court's decision in Crawford v. Washington, 541 U.S. 36 (2004), and

its progeny, the landscape of the Confrontation Clause of the Sixth Amendment has changed

dramatically.  Although the Sixth Amendment is not at issue in this case, neither our Supreme

Court nor this Court has addressed what constitutes "good cause" to deny the right of

confrontation in revocation hearings provided by the Fourteenth Amendment's due process

protections in light of the evolution of the Confrontation Clause of the Sixth Amendment.  The

majority opinion continues to avoid addressing this issue, leaving the circuit courts with no

guidance on how to proceed in such hearings.  For the reasons that follow, I believe that the

Commonwealth should adopt the balancing test used in a number of our sister states because, of

the two tests in use in other jurisdictions, the balancing test is more consistent with the current

interpretation of the right of confrontation found in Crawford and its progeny.

I.  Testimonial Evidence & the Due Process Right to Confrontation

"In Crawford v. Washington, 541 U.S. 36, 53-54, 124 S. Ct. 1354, 158 L. Ed. 2d 177

(2004), [the United States Supreme Court] held that [the Confrontation Clause of the Sixth

---

the circuit court then promptly overruled Henderson's objection without comment and certainly
without making any specific finding of "good cause" for denying confrontation as required by
Morrissey.

     In addition, to the extent that the majority excuses the circuit court's failure to make a
specific finding of "good cause" as required by Morrissey by resting upon the presumption that
the circuit court is presumed to know and apply the law correctly, I respectfully suggest that any
fair reading of the dialogue between the circuit court, the prosecutor, and Henderson's counsel
would lead to the clear conclusion that any such presumption is rebutted by the record and that
however inartful the objection by Henderson's counsel might have been, neither the prosecutor
nor the circuit court were aware of either the existence or the parameters of the due process right
of confrontation or that Morrissey expressly requires that confrontation be provided *unless* a
court *specifically* finds good cause for not doing so.

     Finally, as part of its "kitchen sink" approach to its analysis affirming the judgment in
this case, the majority also asserts that in this dissent I have recast the assignment of error in this
case.  I respectfully disagree and note that the assignment of error granted by the September 15,
2010 order of this Court in its entirety is as follows:  "Appellant contends the trial court violated
his right of confrontation by admitting Ortiz's hearsay testimony."  It is that assignment of error
that I believe was preserved below and which I have tried, however unpersuasively to the
majority, to address here.

Amendment] bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" Davis v. Washington, 547 U.S. 813, 821 (2006). Therefore, "[o]nly [testimonial statements] cause the declarant to be a 'witness' within the meaning of the Confrontation Clause. It is the testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause." Id. (internal citation omitted). See also Michigan v. Bryant, 131 S. Ct. 1143, 1153 (2011) ("We therefore limited the Confrontation Clause's reach to testimonial statements . . . ." (citing Crawford, 541 U.S. at 68)).

Because the right to confrontation in revocation hearings is more relaxed than that of the Sixth Amendment's Confrontation Clause, see Dickens, 52 Va. App. at 421-22, 663 S.E.2d at 552 ("the Sixth Amendment right of confrontation is a more rigorous right than the due process requirement in a revocation context because a revocation hearing is not a 'criminal proceeding' and the full panoply of rights due a defendant 'does not apply to [probation] revocation'" (alteration in original) (quoting Morrissey, 408 U.S. at 480)), it naturally follows that the due process guarantees of the Fourteenth Amendment cannot exceed those that the Confrontation Clause requires in the context of a trial. As such, any right to confrontation conferred by the requirements of due process can likewise only apply to "testimonial hearsay." Thus, before determining whether "good cause" existed to excuse denying Henderson the right to confront his accusers, we must first determine whether the testimony of Ortiz constitutes "testimonial hearsay." The majority is silent on the issue of whether or not a due process right of confrontation attached to Ortiz's testimony in the first instance and thus I begin my analysis there.

- 29 -

The United States Supreme Court has not provided a precise definition of what is "testimonial." Instead, the Court provided in Crawford that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." 541 U.S. at 51. Further, "[s]tatements taken by police officers in the course of interrogations are also testimonial under even a narrow standard." Id. at 52. "In sum, even if the Sixth Amendment is not solely concerned with testimonial hearsay, that is its primary object, and interrogations by law enforcement officers fall squarely within that class." Id. at 53. Although the Court declined to define what it meant by "interrogation" it provided that "[w]e use the term 'interrogation' in its colloquial, rather than any technical legal, sense," and further that "one can imagine various definitions . . . , and we need not select among them in this case." Id. at 53 n.4.

Later, in Davis, the Court

> further clarified what constitutes a "testimonial" statement: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the *primary purpose* of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."

Crawford v. Commonwealth, 281 Va. 84, 98, 704 S.E.2d 107, 116 (2011) (emphasis added) (quoting Davis, 547 U.S. at 822). The Court also explained that when it said in Crawford that

> "interrogations by law enforcement officers fall squarely within [the] class" of testimonial hearsay, we had immediately in mind (for that was the case before us) interrogations solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator. The product of such interrogation, whether reduced to a writing signed by the declarant or embedded in the memory (and perhaps notes) of the interrogating officer, is testimonial.

- 30 -

Davis, 547 U.S. at 826 (alteration in original) (quoting Crawford, 541 U.S. at 53).  Thus, "a statement is testimonial if it is given while '[t]here was no emergency in progress,' and is made for the purpose of 'establish[ing] or prov[ing] past events *potentially relevant* to later criminal prosecution.'"  Crawford, 281 Va. at 98, 704 S.E.2d at 116 (alterations in original) (quoting Davis, 547 U.S. at 829, 822).

The United States Supreme Court recently addressed the Sixth Amendment Confrontation Clause in Bryant, 131 S. Ct. 1143, and further expanded upon what constitutes a police interrogation which "primary purpose" is "to enable police assistance to meet an ongoing emergency."  Id. at 1150.  In Bryant, the Court held that the statements of a dying man made to the police were non-testimonial when the officers asked the victim questions after finding him shot at a gas station and did not know the shooting location, the location of the assailant or whether the assailant posed a continuing threat.  The Court noted that, "the most important instances in which the [Confrontation] Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial."  Id. at 1155.  However, the Supreme Court went on and explained,

> [w]hen, as in Davis, the primary purpose of an interrogation is to respond to an "ongoing emergency," its purpose is not to create a record for trial and thus is not within the scope of the [Confrontation] Clause.  But there may be *other* circumstances, aside from ongoing emergencies, when a statement is not procured with a primary purpose of creating an out-of-court substitute for trial testimony.  In making the primary purpose determination, standard rules of hearsay, designed to identify some statements as reliable, will be relevant.  Where no such primary purpose exists, the admissibility of a statement is the concern of state and federal rules of evidence, not the Confrontation Clause.

Id. (emphasis in original).

"To determine whether the 'primary purpose' of an interrogation is 'to enable police assistance to meet an ongoing emergency,' which would render the resulting statements non-testimonial, we objectively evaluate the circumstances in which the encounter occurs and the statements and actions of the parties." Id. at 1156 (quoting Davis, 547 U.S. at 822). In this objective analysis, a court may consider the "statements and actions of both the declarant and interrogators" and "the circumstances in which an encounter occurs" to determine the primary purpose of the interrogation. Id. at 1160.

With respect to the crime that Henderson allegedly took part in on October 2, 2009, Detective Ortiz testified that after she was assigned to the case, she called the victim and the victim's daughter to review the case. The October 6 statements of the victim and the victim's daughter to Ortiz as recorded by her in her investigative report were the basis of the testimony that Ortiz gave at the revocation hearing regarding the October 2 crime. From the record, it is clear that this testimony came from the formal setting of a police officer investigating a past crime by seeking facts regarding each alleged robbery for the purpose of apprehending and prosecuting the perpetrator. Id. ("Formality is not the sole touchstone of our primary purpose inquiry because, although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to 'establish or prove past events potentially relevant to later criminal prosecution,' [Davis, 547 U.S.] at 822, informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent."). Ortiz's interrogation of the victim and the victim's daughter in the first incident occurred four days after the alleged crime and after a full preliminary investigation was conducted. Further, the interviews took place over the phone, further demonstrating that there was clearly no ongoing emergency and that the statements were taken for the express purpose of possible criminal

prosecution. Thus, Ortiz's statements at trial relating to the October 2 incident were clearly testimonial hearsay.

Detective Ortiz also testified concerning an alleged home invasion robbery that took place on the night of October 8, 2009. Ortiz testified from her report that she met with the victim at the police station regarding the incident. Although this investigation took place the same evening of the alleged crime, it occurred away from the scene of the crime in the safety of the police station. Further, Ortiz was only present because of the supposed participation of Henderson in the crime. Thus, the information Ortiz received from the victim was not provided during an ongoing emergency in order to enable police to respond to it; rather, Ortiz was seeking to determine what had already occurred and to preserve it for later use in connection with criminal court proceedings. Crawford, 281 Va. at 98, 704 S.E.2d at 116. As such, Ortiz's testimony relating to the second incident also constituted testimonial hearsay, to which the limited Fourteenth Amendment due process right of confrontation applies.

## II. The Appropriate Test for "Good Cause"

As discussed *supra*, a probationer at a revocation hearing has the "right to confront and cross-examine adverse witnesses *(unless the hearing officer specifically finds good cause for not allowing confrontation) . . . .*" Morrissey, 408 U.S. at 489 (emphasis added). As the majority correctly points out, different jurisdictions are split between two tests in order to determine whether to admit testimonial hearsay evidence under the "good cause" exception. In Reyes v. State, 868 N.E.2d 438, 441 (Ind. 2007), the Indiana Supreme Court explained both methods:

> In one, the trial court employs a balancing test that weighs the probationer's interest in confronting a witness against the interests of the State in not producing the witness. E.g., United States v. Martin, 382 F.3d 840, 844-45 (8th Cir. 2004). In the balancing test, the State is required to show good cause for denying confrontation. See United States v. Rondeau, 430 F.3d 44, 48 (1st Cir. 2005). In another test, the trial court determines whether the evidence reaches a certain level of reliability, or if it has a

substantial guarantee of trustworthiness. E.g., United States v. Kelley, 446 F.3d 688, 692 (7th Cir. 2006). The requirement, found in Morrissey, 408 U.S. at 489, that the trial court find "good cause" before denying the right to confrontation plays an explicit role when a trial court performs a balancing test; however, this does not mean that Morrissey's good cause requirement is not addressed in the substantial trustworthiness test. . . . [T]he substantial trustworthiness test implicitly incorporates good cause into its calculus.

See also People v. Breeding, 772 N.W.2d 810, 818 (Mich. 2009) (quoting Reyes, 868 N.E.2d at 441).

In assessing the probationer's interest in confronting a witness under the balancing test, a court must consider that

although every [probationer] has the right to confrontation, this right is not static, but is of greater or lesser significance depending on the circumstances. [United States v.] Martin, 984 F.2d [308,] 310-11 [(9th Cir. 1993)]. The weight to be given the right to confrontation in a particular case depends on two primary factors: the importance of the hearsay evidence to the court's ultimate finding and the nature of the facts to be proven by the hearsay evidence. See id. at 311. As the Martin court emphasized, "the more significant particular evidence is to a finding, the more important it is that the [probationer] be given an opportunity to demonstrate that the proffered evidence does not reflect 'verified fact.'" Id. So, too, the more subject to question the accuracy and reliability of the proffered evidence, the greater the [probationer's] interest in testing it by exercising his right to confrontation.

United States v. Comito, 177 F.3d 1166, 1171 (9th Cir. 1999). However,

[i]n the balancing process, the [probationer's] interest in confronting the declarant is entitled to little, if any, weight where the declarant's absence is the result of intimidation by the [probationer]: Where a defendant has procured the declarant's unavailability "by chicanery, . . . by threats, . . . or by actual violence or murder," the defendant is deemed to have "waived his sixth amendment rights and, *a fortiori*, his hearsay objection" to the admission of the declarant's statements.

United States v. Williams, 443 F.3d 35, 45 (2d Cir. 2006) (quoting United States v. Mastrangelo, 693 F.2d 269, 272-73 (2d Cir. 1982), cert. denied, 467 U.S. 1204 (1984)).

"In assessing the government's position, the [court] should consider, first, 'the explanation the government offers of why confrontation is undesirable or impracticable' and, second, 'the reliability of the evidence which the government offers in place of live testimony.'" Martin, 382 F.3d at 845 (quoting United States v. Bell, 785 F.2d 640, 643 (8th Cir. 1986)). "'Where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause.'" Id. (quoting Bell, 785 F.2d at 643). "'Where, on the other hand, . . . the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.'" Id. (quoting Bell, 785 F.2d at 643).

On the other hand, under the reliability test "the trial court determines whether the evidence reaches a certain level of reliability, or if it has a substantial guarantee of trustworthiness," and "the substantial trustworthiness test implicitly incorporates good cause into its calculus." Reyes, 868 N.E.2d at 441 (citations omitted); see also Kelley, 446 F.3d at 692; Crawford v. Jackson, 323 F.3d 123, 131 (D.C. Cir. 2003); Hampton v. State, 203 P.3d 179, 184-85 (Okla. Crim. App. 2009). "Hearsay evidence has been held admissible in federal probation and parole revocation proceedings where the evidence is 'demonstrably reliable.'" Turner v. Commonwealth, 278 Va. 739, 742, 685 S.E.2d 665, 667 (2009) (quoting United States v. McCallum, 677 F.2d 1024, 1026 (4th Cir. 1982)). In Curtis v. Chester, 626 F.3d 540, 545 (10th Cir. 2010), the court noted the following "[e]xamples of evidence possess[ed] recognized indicia of reliability":

> (1) the conventional substitutes for live testimony (e.g., affidavits, depositions, and documentary evidence), (2) statements falling under an established exception to the hearsay rule, (3) statements corroborated by detailed police investigative reports, and (4) statements corroborated by the releasee's own statements. See [Scarpelli], 411 U.S. at 782 n.5; Prellwitz v. Berg, 578 F.2d 190,

193 (7th Cir. 1978) (evidence falling under the "business record"
hearsay exception is reliable); Jackson, 323 F.3d at 130-31
(evidence corroborated by observations in a police investigative
report is reliable); McCallum, 677 F.2d at 1026 (evidence
corroborated by the releasee's testimony is reliable).

See also United States v. McCormick, 54 F.3d 214, 224 (5th Cir. 1995) (concluding that

"[s]ubstantial evidence enhanced the reliability of the information contained in the . . . report");

United States v. Garcia, 771 F.2d 1369 (9th Cir. 1985) (holding evidence reliable where

defendant's in-court statements supported the evidence and he pled guilty on numerous charges

before several different judges).  In United States v. Lloyd, 566 F.3d 341, 345 (3d Cir. 2009),

 the court noted,

> [h]earsay given under oath, Comito, 177 F.3d at 1171, Crawford,
> 323 F.3d at 129, replete with detail, United States v. Bell, 785 F.2d
> 640, 644 (8th Cir. 1986); Crawford, 323 F.3d at 129, or supported
> by corroborating evidence, Kelley, 446 F.3d at 692; Martin, 382
> F.3d at 846, has been recognized as reliable. Conversely,
> out-of-court statements reflecting an adversarial relationship with
> the accused, Comito, 177 F.3d at 1171, or containing multiple
> layers of hearsay, United States v. Fennell, 65 F.3d 812, 813 (10th
> Cir. 1995); Crawford, 323 F.3d at 129, have been recognized as
> unreliable.

Although the Supreme Court of the United States has yet to review either test, other

jurisdictions have found both tests to be proper under current constitutional jurisprudence.

Virginia has not expressly adopted either of the tests.  Nevertheless, the Fourteenth

Amendment's due process protections include a right to confrontation in revocation hearings that

the courts of the Commonwealth must protect and we should provide some direction to the

circuit courts of the methodology for doing so.  See Morrissey 408 U.S. at 480.  Although this

right contains the "good cause" exception not found in that of the Confrontation Clause of the

Sixth Amendment, see Dickens, 52 Va. App. at 421-22, 663 S.E.2d at 552, it is important to

understand the evolution of the Sixth Amendment's Confrontation Clause in order to determine

the extent to which even a diluted version of the right of confrontation applies in revocation

hearings. In <u>Crawford v. Washington</u> and the several Sixth Amendment cases that followed it, the Supreme Court clearly and emphatically shifted away from using reliability as a factor in any Sixth Amendment Confrontation Clause analysis. If "reliability" no longer has any place in a Sixth Amendment inquiry, I fail to see how it retains any vitality even in its separate and diluted due process guise. Thus, I believe that in the Commonwealth, the "good cause" exception to providing confrontation in revocation hearings should rest upon the balancing test.

Prior to <u>Crawford</u>, 541 U.S. 36, <u>Ohio v. Roberts</u>, 448 U.S. 56 (1980), controlled the Sixth Amendment Confrontation Clause jurisprudence through the application of an "indicia of reliability" test. <u>Crawford</u> expressly overruled <u>Roberts</u>. In <u>Roberts</u>, the Supreme Court specifically held that

> when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. at 66. Thus, under <u>Roberts</u>, the Confrontation Clause was satisfied if the witness was unavailable and the hearsay statement was sufficiently inherently reliable to satisfy a long-standing exception to the rule barring hearsay testimony.

The Supreme Court began its retreat from excusing confrontation if the hearsay evidence was subjectively reliable in <u>Lilly v. Virginia</u>, 527 U.S. 116 (1999), where it held that only evidence that could be classified within a "firmly rooted" hearsay exception was sufficiently trustworthy to excuse confrontation and such exceptions could only be considered

> "firmly rooted" if, in light of "longstanding judicial and legislative experience," <u>Idaho v. Wright</u>, 497 U.S. 805, 817, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990), it "rests [on] such [a] solid foundation that admission of virtually any evidence within [it] comports with the 'substance of the constitutional protection.'" <u>Roberts</u>, 448 U.S.

- 37 -

> at 66 (quoting Mattox [v. United States], 156 U.S. [237,] 244
> [(1895)]).  This standard is designed to allow the introduction of
> statements falling within a category of hearsay whose conditions
> have proven over time "to remove all temptation to falsehood, and
> to enforce as strict an adherence to the truth as would the
> obligation of an oath" and cross-examination at a trial.  Mattox,
> 156 U.S. at 244.

Id. at 126 (first three alterations in original).  "Established practice, in short, must confirm that

statements falling within a category of hearsay *inherently* 'carry special guarantees of credibility'

essentially equivalent to, or greater than, those produced by the Constitution's preference for

cross-examined trial testimony."  Id. (emphasis added) (citation omitted).  I note that in Lilly, the

United States Supreme Court reversed both the Virginia Supreme Court and the previous

precedent of this Court in holding that accomplice statements admitted under the hearsay

exception for statements made against penal interest "are not within a firmly rooted exception to

the hearsay rule."  Id. at 134.

However, the Supreme Court overruled the so-called "indicia of reliability" test set forth

in Roberts and Lilly in

> Crawford v. Washington, 541 U.S. 36 (2004), [and] held that the
> Confrontation Clause applies to testimonial hearsay and in order
> for such hearsay to be admissible, the witness must be unavailable
> and the accused must have had an opportunity for
> cross-examination.  Id. at 68.  The Court noted that the
> Confrontation Clause targeted a specific "evil," namely the
> "civil-law mode of criminal procedure, and particularly its use of
> *ex parte* examinations as evidence against the accused."  Id. at 49.
> The Court reasoned that the Confrontation Clause protects against
> "testimonial" statements because, it only "applies to 'witnesses'
> against the accused – in other words, those who 'bear testimony.'"
> Id. at 51 (quoting 2 N. Webster, An American Dictionary of the
> English Language (1828)).

Dickens, 52 Va. App. at 418, 663 S.E.2d at 551.  "The [Supreme] Court stated '[w]here

testimonial statements are at issue, the only indicium of reliability sufficient to satisfy

- 38 -

constitutional demands is the one the Constitution actually prescribes: confrontation.'"

Crawford, 281 Va. at 97, 704 S.E.2d at 115 (quoting Crawford, 541 U.S. at 68-69).

Following its decision in Crawford v. Washington, the Supreme Court has continued to demonstrate its unwillingness to allow prosecutors to avoid defendants' Confrontation Clause rights regardless of the reliability of the testimony itself. In Melendez-Diaz v. Massachusetts, 129 S. Ct. 2527 (2009), the Court declined to create a forensic evidence exception to their test in Crawford v. Washington, holding that a forensic laboratory report which was prepared for a criminal trial was still testimonial for Confrontation Clause purposes. Id. at 2532. Most recently, in Bullcoming v. New Mexico, 131 S. Ct. 2705 (2011), the Supreme Court held that a forensic laboratory report that was obtained using standard procedures and was certified by a technician could not be introduced through a different technician who did not personally perform the analysis that was contained in the report. Id. at 2710. In reaching its holding, the Court rejected the New Mexico Supreme Court's contention that the original technician was a "'mere scrivener'" who "'simply transcribed the result[] generated by the gas chromatograph machine,' presenting no interpretation and exercising no independent judgment." Id. at 2713. Instead, the Court reasoned that

> [the original technician] certified that he received Bullcoming's blood sample intact with the seal unbroken, that he checked to make sure that the forensic report number and the sample number "correspond[ed]," and that he performed on Bullcoming's sample a particular test, adhering to a precise protocol. He further represented, by leaving the "[r]emarks" section of the report blank, that no "circumstance or condition . . . affect[ed] the integrity of the sample or . . . the validity of the analysis." These representations, relating to past events and human actions not revealed in raw, machine-produced data, are meet for cross-examination.

Id. at 2714 (internal citations to the record omitted).

The Supreme Court has also held that "the Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court." Melendez-Diaz, 129 S. Ct. at 2540. This is consistent with the balancing test, which requires the Commonwealth to affirmatively establish good cause why it could not produce the witness. The reliability test, on the other hand, can be satisfied through the testimony itself if the testimony is inherently reliable and only "implicitly incorporates good cause into its calculus." Reyes, 868 N.E.2d at 441 (citations omitted). Thus, in most instances under the reliability test, the Commonwealth's burden specified in Morrissey is effectively removed from the analysis.

A. Applying the Balancing Test

Under the balancing test, Henderson had a very strong interest in confronting the witnesses against him, and the Commonwealth failed to provide any reasons why they could not present the actual witnesses against him.

Henderson's interest in confronting the witnesses against him was extremely high, because the statements made by the witnesses were "'detailing the specific criminal wrongdoing of the defendant'" in crimes that he denied any involvement in. Dickens, 52 Va. App. at 419, 663 S.E.2d at 551 (quoting Jasper v. Commonwealth, 49 Va. App. 749, 755, 644 S.E.2d 406, 410 (2008)). These allegations therefore directly implicated Henderson in violating the terms of his probation. Specifically, Henderson was alleged to violate the terms of his probation by failing to "obey all Federal, State and local laws and Ordinances" and "report any arrest, including traffic tickets, within 3 days to the Probation and Parole Officer." Since the probation officer was not called as a witness, the hearsay testimony of Ortiz was dispositive of any finding with respect to the alleged violations.

Further, Detective Ortiz's testimony was a detailed recitation of the facts given to her by the unsworn verbal allegations of witnesses to two alleged crimes. Comito, 177 F.3d at 1171

("Unsworn verbal allegations are, in general, the least reliable type of hearsay . . . .").  The only other evidence in the record supporting Ortiz's testimony was what the majority characterizes as Henderson's corroboration of what he told the alleged victim of the first crime and his daughter regarding his phone – that he lends his phone to a lot of people, and he could not remember whom he had loaned it to that day.  Further, while Henderson's mother testified at trial, her testimony of the facts regarding where Henderson was on the night of the alleged second crime was adverse to both Henderson's and Ortiz's testimony, and there is no additional evidence in the record corroborating Ortiz's testimony regarding the witnesses' statements she testified to.  Curtis, 626 F.3d at 547 ("Because the credibility of the victim's statements are supported by other sources, Curtis has a diminished interest in testing those statements through confrontation." (citing Comito, 177 F.3d at 1171)).  Thus, the hearsay testimony was indisputably important to the circuit court's finding of a violation.

On the other hand, the Commonwealth provided no reason to the circuit court as to why it could not produce the witnesses for cross-examination and thus the circuit court had nothing to "balance" against Henderson's right to confront his accusers.  There is no evidence in the record that the Commonwealth made any good faith attempt to subpoena the witnesses or otherwise produce them in court.  In addition, there is no evidence in the record that the witnesses had moved or that they could not be located.  Id. at 547-48 ("In contrast, the government's 'good cause for not allowing confrontation,' Morrissey, 408 U.S. at 489, was that the victim could not be located.").

The majority contends that this case is similar to Bell, 785 F.2d 640.  However, Bell is inapt to this analysis for several reasons.  In Bell, which predates the changes wrought by Crawford, the court stated it was employing a "balancing test" where the second prong, the government's burden, could be established under different circumstances:

- 41 -

First, the court should assess the explanation the government offers of why confrontation is undesirable or impractical. For example, the government might contend that live testimony would pose a danger of physical harm to a government informant, see Birzon v. King, 469 F.2d 1241, 1244 (2d Cir. 1972), or, as suggested by Gagnon, that procuring live witnesses would be difficult or expensive.

A second factor that must be considered, and one that has been focused upon by a number of courts, is the reliability of the evidence which the government offers in place of live testimony. See, e.g., United States v. Burkhalter, 588 F.2d 604, 607 (8th Cir. 1978); United States v. McCallum, 677 F.2d 1024, 1026-27 (4th Cir.), *cert. denied*, 459 U.S. 1010, 74 L. Ed. 2d 400, 103 S. Ct. 365 (1982). Thus, where the government demonstrates that the burden of producing live testimony would be inordinate and offers in its place hearsay evidence that is demonstrably reliable, it has made a strong showing of good cause. Where, on the other hand, the government neither shows that presenting live testimony would be unreasonably burdensome nor offers hearsay evidence that bears indicia of reliability, the probationer is entitled to confrontation.

Id. at 643. However, in application, the second factor was actually applied much like the reliability test. Id. For example, the majority in this case bolsters its own argument using the court's holding in Bell that a police report was admissible. In actuality, the Bell court held that the police report, which may have been unreliable on its own, was admissible because the defendant's own admissions corroborated the police report to the point to which it became reliable. Id. at 643-44. Thus, in addition to reliability being a suspect consideration post-Crawford, the Bell court actually failed to consider either side of the balancing test; it made no finding in regard to the defendant's interest in confronting the witness or the state's interest in not producing the witness. In fact, the court expressly declined to render a judgment on the government's interest in not producing the witness. Id. at 644 ("considerable expense would no doubt have been involved had the government secured, either under subpoena or voluntarily, the personal appearance of the Kansas officers [who wrote the police report]. Whether this expense, coupled with whatever degree of customary reliability can be imputed to arrest reports, would

- 42 -

constitute "good cause" for purposes of dispensing with the right of confrontation is a question we need not reach in the present case, because Bell's own admissions sufficiently corroborate the police reports to make it clear that they were indeed reliable.").[9]

The majority suggests the balancing test was satisfied in Henderson's case because the witnesses were intimidated and, thus, should be excused from testifying. In the first place, the Commonwealth asserted no such reason to the circuit court for rejecting Henderson's right to cross-examine his accusers. In the second place, the circuit court made no such specific factual finding as required by Morrissey and finally, it is not a proper role for this Court to make any factual finding of "good cause" where both the circuit court and the prosecutor were completely silent on the matter below. While I do not dispute that the Commonwealth can use a fear of retaliation or intimidation generated by a defendant or his agents as the basis for a "good cause" exception to providing confrontation, the record does not support the majority's *sua sponte* conclusion in that regard. The circuit court made no finding that such was the case nor did the prosecutor even offer that as an explanation as required by the balancing test. Moreover, and contrary to the statement of the majority, the record does not support a conclusion that Henderson himself or through an agent, attempted to intimidate or discourage any witnesses from testifying. In the first incident, the alleged victim merely informed Ortiz that he "really didn't want to file charges because people knew his daughter, and they all were in the neighborhood, they live in the same neighborhood, they knew where he lived." Without more, such inchoate concerns about pursuing prosecution do not begin to overcome Henderson's substantial interest in confronting the witnesses against him, nor is it evidence as to why the

---

[9] It should also be noted that the Bell court improperly interpreted Morrissey as being based on the Sixth Amendment. Bell, 785 F.2d at 642 ("In Morrissey, the Supreme Court held that the Sixth Amendment confrontation clause affords parolees in parole-revocation proceedings the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).").

Commonwealth could not produce the victim or his daughter at the probation revocation hearing. With respect to the second incident, Ortiz testified that the alleged victim and his mother refused to testify because they were scared of retaliation. However, the only evidence of retaliation in the record involved the second victim's mother who informed Ortiz that "the day before the court she heard gunshots around her house, and that really scared her." However, nowhere in the record did Ortiz testify that the witness actually believed the gunshots were in any way connected with Henderson. While Ortiz testified that she had heard one of the other individuals involved in the second crime refer to a gun in a telephone conversation with his girlfriend, the Commonwealth did not establish or even attempt to establish any link between Henderson, the gun referred to, and the gunshots heard near the house.

In short, the record before this Court fails to demonstrate that "good cause" existed for excusing confrontation under the balancing test, because the Commonwealth has failed to satisfy its burden of establishing that a governmental interest was served by not producing the witnesses against Henderson that outweighed Henderson's interest in confronting those witnesses. Therefore, the Commonwealth neither satisfied Henderson's due process right to confront the adverse witnesses against him nor adequately justified its failure to do so. Consequently, the circuit court could not, and therefore did not, satisfy the requirements of Morrissey and balance Henderson's interest in confronting the witnesses against him against any interest the Commonwealth may have had in denying Henderson that right.

## B. Applying the Reliability Test

Although the United States Supreme Court has yet to consider the due process implications of its post-Crawford jurisprudence, it seems clear to me that, where there is a liberty interest at stake, the subjective reliability of any testimonial hearsay no longer has a place in any analysis involving any form of the right to confront and cross-examine one's accuser.

However, even if I were to assume that the reliability test governs this case, the testimony still should not have been admitted. Contrary to the analysis of the majority, even pre-<u>Crawford</u>, the definition of evidence "reliable" enough to excuse confrontation was defined in <u>Roberts</u> and <u>Lilly</u> as evidence which satisfies a "firmly rooted" exception to the evidentiary rule barring hearsay testimony. The majority points to no "firmly rooted" hearsay exception that would apply to Ortiz's testimony. In fact, none of them do. The majority simply finds her testimony subjectively reliable. However, the majority's subjective assessment of the credibility of the hearsay related by Ortiz plays no role in any application of the reliability test. In this case, the hearsay statements that Ortiz used to establish that Henderson violated the conditions of probation meet no firmly rooted exception to the hearsay rule that makes them inherently reliable. Rather, the evidence upon which the trial court revoked Henderson's probation was unsworn statements by out-of-court witnesses whom Henderson had no ability to cross-examine. <u>See</u> <u>Comito</u>, 177 F.3d at 1171 ("[u]nsworn verbal allegations are, in general, *the least reliable type of hearsay . . .*" (emphasis added)).

In the first incident, Ortiz spoke with both the victim and his daughter four days after the incident had occurred, and after both witnesses had spoken with Henderson in person regarding the phone calls. The majority contends that Henderson's own statements corroborate the victim's story. In response, I must first observe that corroboration is not an element of any hearsay exception, "firmly rooted" or otherwise. Even under the old and now rejected <u>Roberts</u> and <u>Lilly</u> standard for reliability, corroboration was not part of a confrontation analysis. Unless the hearsay evidence was in the form of a dying declaration, exited utterance or some other long standing exception to the rule barring hearsay, the evidence was constitutionally infirm even if corroborated. Moreover, Ortiz only testified that "[Henderson] tells me basically the same thing," which, in context, would have been limited to the fact that he had told the victim and his

daughter that "he lends his phone to a lot of people and he do[esn't] remember who he loaned it to that day." This is not corroborative of the attempted robbery. Instead, the fact that Henderson had loaned the phone to someone else and that he did not remember who it was does not corroborate any of the statements regarding Henderson's involvement in the robbery.

In the second alleged crime, the victim related eyewitness information to Ortiz at the police station at some point after the incident occurred, but the record is not clear at what point the interview took place.[10] In addition, the information regarding the alleged home invasion robbery was not detailed. Ortiz testified that the victim informed her that three subjects knocked on his front door, entered the unlocked door, and stole some of his personal property. Ortiz stated that the victim told her subject number one had a gun and that subject number two was "Terrence" whom he had met a couple of weeks prior at the probation office. The victim then picked Henderson as one of the individuals out of a series of photos that Ortiz showed him. These statements are also unsworn statements by an out-of-court witness whom Henderson had no ability to cross-examine and, as such, are inherently unreliable. Id. The majority contends that these statements are reliable because they are also corroborated by Henderson's own statements. Again, I note that *inherent* reliability based upon a firmly rooted hearsay exception is the test and any extrinsic corroboration is of no moment in a constitutional analysis and the record certainly does not suggest that the victim's statements to Ortiz were exited utterances or subject to the *res gestae* or any other exception to the hearsay rule. In addition, Henderson's statement to Ortiz only corroborated that he knew one of the co-defendants and that he had been in the vehicle that was involved in the investigation in which some of the stolen property was

---

[10] Ortiz testified that she "received a phone call at night at my house to come in to investigate a home invasion robbery" and that she "came to the station, that was October 8th, met with the victim." She later testified that the home invasion robbery took place "around 11:00 at night."

later discovered by the police.  The statements did not corroborate any incriminating evidence against Henderson.

The majority cites to Crawford, 323 F.3d 123, in support of their argument.  However, Crawford v. Jackson is a 2003 case which was decided prior to Crawford v. Washington.  In fact, the same court addressed the issue of whether Crawford v. Jackson was still good law in light of the Supreme Court's decision in Crawford v. Washington in Ash v. Reilly, 431 F.3d 826 (D.C. Cir. 2005).  Although the Ash court ultimately held that Crawford v. Washington did not overrule Crawford v. Jackson, the court remanded the case back to the trial court for a rehearing. Id. at 831.  Interestingly, on rehearing, the court ultimately employed a balancing test in which "whether the Commission impermissibly denied a parolee the right to confront adverse witnesses depends on the parolee's need for confrontation as weighed against the Commission's reasons for not producing adverse witnesses."  Ash v. Reilly, 433 F. Supp. 2d 37, 43 (D.D.C. 2006).

Because neither of the out-of-court statements made to Ortiz were inherently reliable by satisfying a firmly rooted exception to the hearsay rule, I believe that the majority errs in holding that the hearsay evidence offered by Ortiz is so demonstrably and inherently reliable that Henderson's limited right to confrontation in a probation revocation hearing should have been denied.

### III.  Conclusion

Because the Supreme Court has overturned Roberts and Lilly and altered the Sixth Amendment Confrontation Clause landscape with Crawford v. Washington and subsequent cases, I do not believe that reliability is any longer the lynchpin of a confrontation analysis, under either the Sixth Amendment or the Due Process Clause of the Fourteenth Amendment. Although the Sixth Amendment right is not directly implicated in probation hearings, it does directly correlate to the right to confrontation afforded in such proceedings under the Due

Process Clause of the Fourteenth Amendment. I believe that it makes no sense to maintain a separate analytical formula utilizing otherwise expressly rejected criteria for a due process confrontation analysis as distinguished from a similar, though more rigorous, analysis to the more comprehensive right of confrontation that attaches at trial.

For these reasons, I believe that the courts of the Commonwealth should adopt the balancing test because it eschews the superseded reliability analysis that is no longer constitutionally favored and instead, places the burden on the Commonwealth to either produce the witnesses for cross-examination or require it to establish good cause for not doing so. Put differently, in non-trial proceedings involving an accused's liberty interest, I believe that we should adopt an approach that requires the Commonwealth to explain and justify its failure to provide confrontation *before* considering the evidentiary admissibility of any testimonial hearsay. To do so would be more consistent with the overall purpose of both Morrissey, which requires an opportunity to confront testimonial hearsay as the default position for any due process analysis, and the analytical framework found in the post-Roberts cases of Crawford, Davis, Melendez-Diaz, Bryant, and Bullcoming. As discussed above, what all of these cases have in common is that they require more than mere considerations of reliability in permitting the use of testimonial hearsay in a trial setting, and thus I believe that, where a liberty interest is at stake, the balancing test is more faithful to current confrontation jurisprudence in the context of providing due process.

In summary, I would hold that the circuit court erred in failing to either require the Commonwealth to honor Henderson's due process right to confront his accusers or in its failure to require an explanation from the Commonwealth and to make specific findings that good cause existed for not doing so. I would therefore remand this case to the circuit court for a new hearing on the issue of whether Henderson's probation should be revoked, if the Commonwealth is so

advised.  I would further hold that if, on remand, it is necessary for the circuit court to determine

if "good cause" exists for not permitting Henderson to confront the witnesses against him, the

circuit court should employ a balancing test as outlined above for making that determination.