Arlington

LARRY DONELL ATKINS

v.

COMMONWEALTH OF VIRGINIA

No. 0011-84

Decided May 6, 1986

COUNSEL

Ben R. Lacy, IV, Cecil H. Creasey, Jr. (Woodward, Fox, Wooten & Hart, P.C., on brief), for appellant.

John H. McLees, Jr., Assistant Attorney General (Gerald L. Baliles, Attorney General, on brief), for appellee.

OPINION

**COLE, J.**—At issue in this case is whether the trial court erred when it refused to dismiss the proceeding against the appellant, Larry Donell Atkins (Atkins) to revoke the suspended portions of terms of imprisonment. Atkins alleges that his constitutional rights to a speedy trial were violated. We agree with the trial court and affirm.

On May 9, 1975, Atkins was sentenced to 35 years in the penitentiary, 17 years of which were suspended, for various charges arising out of an armed bank robbery. On July 22, 1982, Atkins was released from the penitentiary on supervised parole. He was convicted in federal court of passing counterfeit currency on January 25, 1983, and sentenced to 18 months in prison with 12 months suspended. Upon receiving notice of the conviction, At-

kins' parole officer wrote to the Commonwealth's Attorney recommending that his suspended sentences be revoked. Atkins was released from federal custody on April 19, 1983, and transferred to the Brunswick Correctional Center for parole revocation proceedings. His parole was revoked.

On March 11, 1983, the Circuit Court for the City of Richmond issued a capias and order for Atkins to show cause why the suspended portions of his sentences should not be revoked. However, these orders were not sent to the Sheriff of Brunswick County until August 20, 1984. They were served on Atkins on August 22, 1984.

Counsel was promptly appointed for Atkins, and on October 12, 1984, the show cause hearing was held. The Commonwealth moved to revoke the suspended portions of the sentences based upon the federal conviction. Atkins moved the court to dismiss the motion, arguing that the 17 month period between the issuance of the capias and show cause order and their service upon him was a violation of his due process right to a speedy trial.

■ On appeal Atkins submits that the delay from the time the capias was issued until the time of his revocation hearing violated his right to a speedy trial guaranteed by both the Sixth Amendment of the United States Constitution[1] and Article I, § 8 of the Virginia Constitution.[2] The rights under both Constitutions are applicable by their terms only in "criminal prosecutions," and it is well settled that "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution." *Gagnon* v. *Scarpelli*, 411 U.S. 778, 782 (1973). There is no merit to Atkins' claim that his right to a speedy trial has been violated under the Sixth Amendment or under Art. I § 8 of the Virginia Constitution.

■ While this type of proceeding is not a stage of a "criminal prosecution," it may result in a loss of liberty. The liberty interest, if any, which Atkins may have comes from the due process clause of the Fourteenth Amendment to the United States Constitution, which precludes the termination of the conditional liberty interest of parolees and probationers in the absence of appropriate due

---

[1] In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial. U.S. Const., amend. VI.

[2] In criminal prosecutions . . . he shall enjoy the right to a speedy and public trial. Va. Const., art. I, § 8.

process safeguards. *Morrissey* v. *Brewer*, 408 U.S. 471 (1972) held that a hearing was mandated to serve the parallel interests of society and the parolee in establishing whether a parole violation occurred and whether the circumstances surrounding the violation warranted a parole revocation. The Court held that the revocation hearing must be tendered within a reasonable time after the parolee is taken into custody. *Id.* at 484-88.

■ The procedural time limits prescribed by statute to safeguard the due process rights of persons receiving suspended sentences or probation are set out in Code § 19.2-306. That section provides, in pertinent part, that when the sentencing court has set a fixed period for the suspension of sentence, as in this case, the suspension must be revoked (if at all) within one year after the expiration of the period of suspension. Atkins' sentencing order specified that the balance of his sentence was to be "suspended for a period of ten (10) years upon release from custody. . . ." Atkins was released from the state penitentiary on July 22, 1982. Applying the statutory time limit set out above, Atkins would have remained liable to have had the suspended portion of his sentence revoked through July 22, 1993. Clearly, the revocation proceedings against Atkins culminating in 1984 were in compliance with the authority conferred by Code § 19.2-306.

The only question remaining is whether some protected interest of Atkins was compromised by the fact that he was not given an immediate hearing upon the issuance of the capias and show cause order, even though he was already incarcerated at the time. We find *Moody* v. *Daggett*, 429 U.S. 78 (1976) dispositive on this issue.

In *Moody*, the Supreme Court stated the issue to be "whether a federal parolee imprisoned for a crime committed while on parole is constitutionally entitled to a prompt parole revocation hearing when a parole violation warrant is issued and lodged with the institution of his confinement but not served on him." *Id.* at 79. In 1962 Moody was convicted of rape in the United States District Court and sentenced to 10 years in prison. He was paroled in 1966 with six years of the sentence remaining to be served. While on parole he shot and killed two persons, and received concurrent 10 year sentences for these crimes. These convictions constituted obvious grounds for the revocation of Moody's parole, and shortly after his incarceration in 1971 for the two homicides, the United

States Board of Parole issued, but did not execute, a parole violation warrant. The warrant was lodged with prison officials as a detainer, ensuring that Moody would not be released from custody on the homicide charges until the parole board had an opportunity to make a parole revocation determination. *Id.* at 80. Moody requested the board to execute the warrant immediately, so that any imprisonment imposed for the parole violation under the 1962 rape conviction could be served concurrently with the homicide sentences. The board declined to execute the warrant, stating that the warrant would be executed only upon the completion of Moody's homicide sentences. Moody initiated legal proceedings to dismiss the warrant on the ground that the denial of a prompt hearing violated his liberty interest protected by *Morrissey*, and that he faced the prospect of waiting ten years before being granted a parole revocation hearing, simply because the board refused to execute the warrant. *Id.* at 81.

The Court found that Moody's then present incarceration was the result of the two 1971 homicide convictions and that the outstanding parole violation warrants had no effect on the liberty interest *Morrissey* sought to protect. The Court stated:

> [W]e establish execution of the warrant and custody under that warrant as the operative event triggering any loss of liberty attendant upon parole revocation. This is a functional designation, for the loss of liberty as a parole violator does not occur until the parolee is taken into custody under the warrant.

*Id.* at 87. It is only after the warrant is executed that fundamental fairness requires the Board of Parole to accord the parolee his due process rights to a hearing within a reasonable time.

Applying *Moody* to this case, we note that the execution of the outstanding warrant took place on August 22, 1984, and the revocation hearing was held on October 12, 1984. There was a span of less than two months from the execution of the warrant - the triggering event - and the time of the hearing. Atkins does not suggest that this period is unreasonable; rather, he argues that the *Moody* decision specifying the execution of the warrant as the operative act is inapposite because *Moody* involved federal procedural rules which distinguish between the issuance and actual execution of

the warrant. According to Atkins, the distinction is meaningless under Virginia law because he was already within the Commonwealth's custody as of April 19, 1983, and his "arrest" was unnecessary and thus devoid of procedural significance.

We are unpersuaded by this argument. Although *Moody* involved federal procedures regarding parolees, it nonetheless defined the limits of the protected liberty interest set out in *Morrissey*, which applies to parolees and probationers alike. Under both the federal procedures described in *Moody*, and the state procedures employed in this case, an outstanding warrant remained unexecuted for a time during which the appellant was otherwise incarcerated. Atkins' incarceration, like that of the defendant in *Moody*, was unrelated to the outstanding warrant; thus, Atkins lost no protected liberty interest as a result of the warrant.

We hold that Atkins was not deprived of any due process rights since there was no duty to provide him a hearing until he was taken into custody as a parole violator by execution of the capias and show cause order upon him. Once this was done, Atkins had a right to, and did receive, a speedy adversary revocation hearing, which resulted in revocation of his suspended sentences.

For the reasons stated, we affirm the judgment of the trial court.

*Affirmed.*

Duff, J., and Benton, J., concurred.