## CIRCUIT COURT OF ISLE OF WIGHT COUNTY

Carrie Cartwright

v.

Walter F. Cartwright

October 17, 2000

Case No. CH0059

BY JUDGE D. ARTHUR KELSEY

The appellant, Walter Cartwright, appeals a judgment from the Juvenile and Domestic Relations Court which revoked a suspended sentenced imposed on him for failing to pay court-ordered child support. Taking issue not with the merits of his alleged nonpayment but rather with the process, Cartwright argues that the JDR court violated principles of procedural due process thus rendering the revocation decision invalid. For the following reasons, the Court agrees.

In March 1998, the Court entered a "Final Decree of Divorce" in Chancery No. 97-10. The Decree ordered Walter Cartwright to pay child support to his former wife for the benefit of their then two-year-old child. The Decree also provided that "jurisdiction for enforcement or modification is transferred to the Juvenile and Domestic Relations Court of Isle of Wight County." Final Decree ¶ 11, at 4 (March 5, 1998); *see also* Amended Final Decree ¶ 11, at 5 (June 5, 1998).

Two months later, in May 1998, Carrie Cartwright filed a motion seeking the issuance of a "Show Cause Summons" compelling Walter Cartwright to pay his court-ordered child support. The JDR court issued the summons,

setting the hearing for June 23, 1998. The summons stated that Walter Cartwright must "show cause, if any, why [he] should not, pursuant to Va. Code § 16.1-278.16 be imprisoned until [he] complies with the Court's order or be fined for failure to provide support . . . ." Walter Cartwright appeared on that day and requested a court-appointed attorney to protect his interests. The JDR court granted the request and continued the case to July 21, 1998.

Walter Cartwright appeared in court on July 21, 1998, and entered a plea of not guilty to the contempt charge. Though "no finding [was] made" on the contempt issue, the JDR court made the notation "ESFG" (the evidence is sufficient for a finding of guilt) and directed Walter Cartwright to pay support and to catch up the arrears. The court ordered that the matter be "cont[inued] to 9-15-98 for review only." Record of Proceeding ¶ 6 (July 21, 1998).

On September 15, 1998, the JDR court found Walter Cartwright guilty of contempt and imposed a six-month jail sentence. See Record of Proceeding ¶ 6 (Sept. 15, 1998). The court suspended the sentence on the condition that Cartwright provide "proof of payments to DCSE" and maintain "current payments plus arrears payment." Id. The court then continued the case until October 27, 1998, and recognized the parties to appear on that day.

On October 27, 1998, Carrie Cartwright appeared in court, but Walter Cartwright did not. The JDR court ordered that a capias be issued to arrest Walter Cartwright for failing to appear as he had been previously directed. See Record of Proceeding ¶ 6 (Oct. 27, 1998). The capias order stated that the defendant must "show cause, if any, why Respondent should not, pursuant to Va. Code § 19.2-128 be imprisoned, fined, or otherwise punished for failure to appear in this Court on 10/27/98 [at] 9:00 a.m."

More than a year passed before the capias was served on Walter Cartwright. The JDR court scheduled a hearing on February 29, 2000, with Walter Cartwright, his court-appointed attorney, and Carrie Cartwright present. The JDR court found Walter Cartwright guilty of failing to appear and imposed a five-day jail sentence. See Record of Proceedings ¶ 6 (Feb. 29, 2000). The JDR court then revoked the suspended sentence that had been "previously sentenced-imposed" in September 1998 and ordered that Cartwright serve his six-month sentence. Id. (purge clause set at $1,500; see also Disposition Notice (Feb. 29, 2000). Walter Cartwright posted the necessary appeal and performance bonds to secure an appeal to the Isle of Wight Circuit Court.

To begin with, the procedural posture of this appeal must be considered. Three principles govern contempt appeals involving multiple orders. First, an aggrieved party may file an appeal of a non-final contempt finding if it imposes a sentence even when the court suspends the execution of the

sentence. *See Peet v. Peet*, 16 Va. App. 323, 326, 429 S.E.2d 487, 489 (1993) ("The fact that the court suspended execution of the sentence and continued the case until a date certain so that [appellant] could purge himself of the civil contempt" did not render the order unappealable.) Second, the party may elect to wait until the entry of a final order. *See Street v. Street*, 24 Va. App. 14, 480 S.E.2d 118 (1997); *cf. Vokes v. Vokes*, 28 Va. App. 349, 504 S.E.2d 865 (1998) (summarizing and distinguishing *Street*). Third, no appeal may be filed if the contempt finding expressly reserves the imposition of the penalty or punishment. *See DuPont Co. v. Univ. Moulded Products Corp.*, 189 Va. 523, 53 S.E.2d 835 (1949).

The custom of continuing cases for review, therefore, precludes an appeal only when the JDR court never imposes a sentence in the first instance. If it imposes a sentence, and then suspends it, later *sua sponte* continuances for "review" may affect the finality of the order, but not its appealability. In this case, as was his right, Walter Cartwright waited to appeal the JDR court's final order revoking his six-month sentence. In doing so, Cartwright challenges only the revocation itself, not the original finding of guilt made by the JDR court over a year earlier.

In particular, Cartwright argues that the JDR court violated principles of due process by failing to provide any pre-hearing notice that his suspended sentence might be revoked. The capias took Cartwright into custody for failing to appear at a prior hearing. The capias did not, Cartwright argues, provide sufficient notice to him or his counsel that the JDR court would take evidence on his wife's charge that he had violated the terms of his suspended sentence by failing to make the required child support payments, thus resulting in the revocation of his suspended sentence and immediate incarceration.

As a starting point, Cartwright's argument begins (as should all claims asserting an unconstitutional deprivation) with the text of the Constitution. The Fourteenth Amendment to the U.S. Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law . . . ." U.S. Const., Amend. XIV, § 1. In this context, "the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law." *Florida Expense Board v. College Savings Bank*, 527 U.S. 627, 642-43 (1999) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis deleted)).

The due process analysis "consists of two steps." *O'Banion v. Commonwealth*, 33 Va. App. 47, 61, 531 S.E.2d 599, 606 (2000) (*en banc*) (citation omitted). "First, a deprivation of a liberty or property interest must be demonstrated." *Id.* (citing *J. P. v. Carter*, 24 Va. App. 707, 715, 485

S.E.2d 162, 167 (1997)). Then, once it is determined that "due process applies, the question remains what process is due." *Id.* (quoting *J. P. v. Carter*, 24 Va. App. at 715, 485 S.E.2d at 167, and *Jackson v. W.*, 14 Va. App. 391, 406, 419 S.E.2d 385, 393-94 (1992)).

Cartwright satisfies the first step of the due process analysis. "The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Black v. Romano*, 471 U.S. 606, 610 (1985) (citing *Bearden v. Georgia*, 461 U.S. 660, 666, and n. 7 (1983)). *See also Wood v. Georgia*, 450 U.S. 261, 271 (1981) ("We have held that due process protections apply to parole and probation revocations."). Though an indeterminate interest subject to forfeiture upon certain conditions, it is a protected liberty interest nonetheless. Cartwright's suspended sentence, with conditions for its continued suspension, created a liberty interest indistinguishable from probation. "Because the revocation of a suspended sentence results in the loss of liberty, the Due Process Clause governs the revocation." *Holden v. Commonwealth*, 27 Va. App. 38, 44-45, 497 S.E.2d 492, 495 (1998). *See also Lux v. Commonwealth*, 24 Va. App. 561, 569, n. 1, 484 S.E.2d 145, 149, n. 1 (1997); *Copeland v. Commonwealth*, 14 Va. App. 754, 756, 419 S.E.2d 294, 295 (1992); *Atkins v. Commonwealth*, 2 Va. App. 329, 331-32, 343 S.E.2d 385, 387 (1986). As a result, the JDR court's revocation of the six-month suspended sentence must comport with due process principles.[1]

Cartwright also satisfies the second step of the analysis. Some form of pre-hearing "notice of the alleged violations of probation" — an essential component of due process — must be given in all cases. *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972). Indeed, "written notice of the claimed violations" must be given prior to the hearing. *Gagnon*, 411 U.S. at 786 (quoting from *Morrissey*, 408 U.S. at 489); *see also Copeland v. Commonwealth*, 14 Va. App. 754, 756, 419 S.E.2d 294, 295 (1992) ("written notice" required).

Given the flexible nature of the notice requirement, it need not be elaborate. Nor must it be as detailed as a typical probation violation report routinely used in criminal felony cases. To be sure, a simple show cause notice

---

[1] Due process seeks to accommodate the individual's liberty interest "while avoiding the imposition of rigid requirements that would threaten the informal nature of probation revocation proceedings or interfere with exercise of discretion by the sentencing authority." *Black*, 471 U.S. at 611. Consequently, the law seeks "to preserve the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial." *Black*, 471 U.S. at 613.

or a capias would suffice if it specified the nature of the allegedly unfulfilled condition. *See Howie v. Commonwealth*, 222 Va. 625, 630, 283 S.E.2d 197, 200 (1981) ("The show cause order, a copy of which was personally served on Howie, informed him fully of his alleged probation violations.") In short, at least some notice *directed to the revocation issue* must be given.

In this case, the JDR court in February 2000 revoked Cartwright's suspended sentence and reimposed the six-month jail term upon finding that Cartwright had violated the court's earlier payment conditions in the September 1998 order. The revocation took place during a hearing scheduled to address Cartwright's earlier failure to appear at the October 27, 1998, hearing. The capias directed to Cartwright addressed only the failure-to-appear charge and included not a word about the potential revocation of his suspended sentence. Given this omission, Cartwright and his counsel claim to have been blind-sided by the JDR court's decision to go beyond the failure-to-appear issue.

Perhaps we should presume that Cartwright *should have known* his suspended sentence was in jeopardy, and indeed, that he would have to face this issue eventually. At the September 15, 1998, hearing, after all, the JDR court continued the hearing to October 27, 1998. Though not expressing designating the continuance for "review" (as with prior orders), that purpose should be inferred. When Cartwright appeared at the failure-to-appear hearing on February 29, 2000, one might presume that Cartwright should have been prepared to answer his wife's allegation that he had violated the terms of the suspended sentence.

Due process principles, however, indulge no such presumptions. *See Copeland v. Commonwealth*, 14 Va. App. 754, 756, 419 S.E.2d 294, 295 (1992) (notice in a pre-sentence report that the probation officer requested a revocation proceeding following the sentencing hearing was insufficient). To the contrary, the written notice must specify both the time and date of the hearing, as well as "the grounds for the hearing." *Id.* A mere continuance to a date certain (whether expressly or implicitly for "review") does not provide adequate notice that the court might revoke the suspended sentence more than a year later at a hearing scheduled to address a failure-to-appear charge.

In sum, the JDR court violated procedural due process principles by failing to provide specific pre-hearing notice to Cartwright that his suspended sentence may be revoked. As a result, the Court vacates the revocation decision and remands this matter back to the JDR court for further proceedings consistent with this opinion. It is so ordered.