COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Athey, Friedman and Lorish
Argued at Salem, Virginia


LESLIE OLIVIA HAIRSTON

                                            MEMORANDUM OPINION[*] BY
v.         Record No. 1322-24-3          JUDGE CLIFFORD L. ATHEY, JR.
                                                 NOVEMBER 5, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF HENRY COUNTY
James R. McGarry, Judge

Elena Kagan, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Melanie D. Edge, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


This appeal arises as the result of the Circuit Court of Henry County ("trial court") finding

Leslie Olivia Hairston ("Hairston") in violation of the terms and conditions of her probation and

thereafter revoking the entirety of her previously suspended sentences.  On appeal, Hairston

contends that the trial court erred when applying Code §§ 19.2-306 and -306.1 by 1) revoking her

suspended sentences after the trial court failed to issue proper notice and 2) imposing three years of

active incarceration based on a good conduct violation that did not result in a criminal conviction.

For the following reasons, we reverse the trial court's judgment.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

Upon her guilty plea in December of 2006, Hairston was convicted on four counts of felony uttering in violation of Code § 18.2-181. Hairston was sentenced to serve four years' incarceration with all the sentence suspended conditioned upon Hairston successfully completing four years of supervised probation, paying her court costs, and making restitution to her victim in the amount of $3,214.82. The case numbers identifying her four uttering convictions included CR06000984-00, -985-00, -986-00, and -987-00. In February of 2011, the trial court granted a two-year extension of Hairston's probation to give her additional time to pay her court costs and restitution in full. Hairston was granted further extensions of her probation to satisfy her court costs and restitution obligation, resulting in her probation end date being moved to August 21, 2015.

On August 10, 2015, Hairston's probation officer filed a major violation report ("MVR"), alleging that Hairston had violated the terms and conditions of her probation by only paying $50 toward her court costs since her last extension of probation was granted and for continuing to owe her victim $1,182.49 in restitution that had by then accrued $967.16 in interest. In response, the trial court issued Hairston a show cause order to be heard on August 17, 2015, in case number CR06000984-01. On June 1, 2016, Hairston's probation officer filed an addendum to the MVR alleging that although Hairston had submitted two checks toward her court costs and restitution, neither check came out of an open bank account. Hairston subsequently attended her

---

[1] "On appeal, '[w]e "view the evidence received at [a] revocation hearing in the light most favorable to the Commonwealth, as the prevailing party, including all reasonable and legitimate inferences that may properly be drawn from it."'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (alterations in original) (quoting *Johnson v. Commonwealth*, 296 Va. 266, 274 (2018)). Also, portions of this record were sealed. "To the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." *Levick v. MacDougall*, 294 Va. 283, 288 n.1 (2017).

revocation hearing held by the trial court on June 22, 2016. By order entered on August 1, 2016, the trial court extended Hairston's probation end date to November 1, 2016, and continued her revocation hearing to October 19, 2016, to give Hairston a final opportunity to pay her restitution.

At Hairston's revocation hearing on October 19, 2016, the trial court found Hairston in violation of the terms and conditions of her probation and revoked her previously suspended sentences before resuspending three years, leaving Hairston one year of active incarceration to serve. Hairston was further ordered to be of good behavior for three years. The revocation order referenced all four original case numbers and added an -01 to each case number, reflecting Hairston's revocation proceeding wherein she was found to have violated her probation. The revocation order also permitted Hairston delayed reporting to jail on November 30, 2016, and provided for reconsideration of her active sentence if she paid the restitution in full prior to her delayed report date. In a contemporaneously entered "Delayed Turn In" order, the trial court held that "failing to turn in on time . . . may constitute a violation of good behavior."

Hairston failed to report to the jail to begin serving her sentence on November 30. Upon being advised of her failure to report to jail, the trial court issued a capias on December 2, 2016, for Hairston's arrest. The capias was issued in case number "CR16001394-00" and instructed law enforcement to "forthwith arrest the defendant and bring him/her before a judicial officer to show cause" why Hairston should not be "found guilty of contempt of court (18.2-456 M) after having failed to surrender to the Henry County Jail on November 30, 2016 . . . to serve a one year active sentence for violation of probation (underlying case CR06000984-01)."

Hairston was eventually found and arrested in North Carolina on April 29, 2024, before being extradited to Virginia. Her pending charge was based upon the capias, which listed "089 CR Fail to surrender to serve 1 year sentence," and her commitment order listed

"089CR1600139400" as her case number. During her initial hearing on the capias held on May 8, 2024—before Hairston had been appointed counsel—the Commonwealth successfully moved to amend the capias for her arrest to reflect a probation violation of Code § 19.2-306 instead of a misdemeanor contempt of court summons in violation of Code § 18.2-456. The trial court granted the amendment and changed the charge, explaining that Hairston was "still charged with failing to surrender to the jail on November the 30th, 2016" and that her actions served as "the essence" of the charge. Hairston asked for and received court-appointed counsel on May 28, 2024.

Just prior to the commencement of the July 10, 2024 revocation hearing, citing Code § 19.2-306(B), Hairston moved to dismiss the probation violation, contending that the trial court lacked subject matter jurisdiction because Hairston had not received a notice of the alleged violation within 90 days or within 1 year after the expiration of her probation. Hairston further asserted that the May 8, 2024 amendment to the capias "doesn't relate back and allow a bootstrapping of that date for when that capias was issued because it wasn't issued" pursuant to Code § 19.2-306. Hairston also averred that by amending the charge, the trial court changed "the nature of the charge" and that for the December 2, 2016 capias to be valid, it would have had to have been issued "under this particular subsection." As a result, Hairston contended that the amendment of the charge "was outside the Court's subject matter jurisdiction." In response, the trial court ruled that "process was issued, and it did notify the accused. It was issued within the ninety-day period contemplated by [Code §] 19.2-306(B)." The trial court further observed that the capias stated that Hairston "was being brought before the Court to show cause" because she failed to surrender herself to the jail on November 30, 2016.

During the revocation hearing, Henry County Sheriff's Office Lieutenant Ed Clark testified that Hairston failed to report to jail on November 30, 2016, as ordered and that he had

- 4 -

notified the trial court. After hearing argument, the trial court found Hairston in violation of the terms of her suspended sentences.

At sentencing, Hairston asserted that under Code § 19.2-306.1(B) her particular violation was only a "good conduct violation" and the court could therefore only impose 14 days of active incarceration, or no incarceration at all. The trial court disagreed and revoked the entirety of Hairston's remaining sentences, a total of three years to be served in addition to the one year that the trial court had previously revoked. The trial court opined that when Hairston was sentenced, a "specific requirement of her sentence was that she turn [herself] in on November the 30th, 2016," and "[t]hat is what she violated." Hairston appealed.

## II. ANALYSIS

### A. *Standard of Review*

"In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Green v. Commonwealth*, 75 Va. App. 69, 76 (2022) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). "We apply an abuse of discretion standard in determining whether the circuit court's interpretation of its order is reasonable." *Roe v. Commonwealth*, 271 Va. 453, 458 (2006). This Court will find an abuse of discretion only when "reasonable jurists could not differ." *Hicks v. Commonwealth*, 71 Va. App. 255, 275 (2019) (quoting *Campos v. Commonwealth*, 67 Va. App. 690, 702 (2017)). Issues of statutory construction are reviewed de novo. *Hodgins v. Commonwealth*, 61 Va. App. 102, 107 (2012).

### B. *The trial court erred by failing to issue proper notice, since the December 2, 2016 capias did not reference Code § 19.2-306(B).*

Hairston first contends that the service of the December 2, 2016 capias on her was not sufficient for notice of a probation violation because the capias referred to a case where her suspended sentence had already been revoked in its entirety in 2016. She further asserts that the

- 5 -

current "capias for another crime did not notify [her] that she faced a revocation of her suspended sentence."[2] We agree.

We first look to the language in a statute, as we are "bound by the plain meaning of that statutory language" if the language is unambiguous. *Lee Cnty. v. Town of St. Charles*, 264 Va. 344, 348 (2002). "The plain, obvious, and rational meaning of a statute is to be preferred over any curious, narrow, or strained construction." *Artis v. Commonwealth*, 76 Va. App. 393, 400 (2023) (quoting *Commonwealth v. Zamani*, 256 Va. 391, 395 (1998)). Code § 19.2-306(B), entitled "Revocation of suspension of sentence and probation," provides that a circuit court

> may not conduct a hearing to revoke the suspension of sentence unless the court issues process to *notify the accused or to compel his appearance before the court* within 90 days of receiving notice *of the alleged violation* or within one year after the expiration of the period of probation or the period of suspension, whichever is sooner, or, in the case of a failure to pay restitution, within three years after such expiration. If neither a probation period nor a period of suspension was fixed by the court, then the court shall issue process within six months after the expiration of the maximum period for which the defendant might originally have been sentenced to be incarcerated. Such notice and service of process may be waived by the defendant, *in which case the court may proceed to determine whether the defendant has violated the conditions of suspension*.

(Emphases added). This statute requires that once a court has received "notice of the alleged violation," it must timely "issue process" that "notif[ies] the accused" that it intends to "conduct a hearing to revoke the suspension of sentence" concerning the "accused" defendant. *Id.* This "notice and service" must be completed or waived by a defendant before "the court may proceed to determine whether the defendant has violated the conditions of suspension." *Id.*

Here, based upon the plain language of the statute, the trial court's issuance of the December 2016 capias was insufficient to permit the trial court to conduct a revocation hearing.

---

[2] We note that Hairston has not brought any constitutional assignments of error under the Due Process Clause but rather asserts that the circuit court did not follow Code § 19.2-306(B).

Although the capias certainly notified Hairston that she would be prosecuted for failing to report to jail, the capias only informed her that she needed to "show cause" why she should not be "found guilty of contempt of court (18.2-456 M)." Crucially, the capias did not advise her that the Commonwealth would be seeking to revoke her suspended sentences. Although the order noted that Hairston "failed to surrender to the Henry County Jail" and that she had been ordered "to serve a one year active sentence for violation of probation," the capias's mention of Hairston's "underlying case CR06000984-01" failed to sufficiently inform Hairston that the Commonwealth had elected to use her allegedly violative conduct while on probation as a basis for an alleged violation. Nor did the capias inform her that the Commonwealth intended to proceed with revoking the balance of her suspended time in CR06000984-01, -985-01, -986-01, and -987-01. Rather, the explicit language of the capias placed Hairston on notice that she would be facing a misdemeanor contempt charge for failing to report to jail, as supported by the commitment order listing the reason why Hairston was held as being "089CR1600139400," the same case number as the capias that the circuit court had issued.

Although there is little guidance concerning this provision of Code § 19.2-306(B), other cases involving notice provisions in a suspended sentence are consistent with our conclusion here. For example, in *Copeland v. Commonwealth*, 14 Va. App. 754, 755 (1992), the appellant was convicted of possession of cocaine with intent to distribute, as well as conspiracy, and given a suspended sentence. While he was still under the terms of his suspended sentence, the appellant was tried for an additional count of conspiracy to distribute cocaine, and the trial court there granted appellant's motion to strike the charge. *Id.* However, after granting the motion to strike, the trial court found that although the evidence was not sufficient to convict appellant of conspiracy, there was enough evidence to find that appellant had "participated as an accessory or principal." *Id.* As a result, the trial court in that case found appellant in violation of the

- 7 -

conditions of his suspended sentence. *Id.* Appellant's objections to the probation violation were subsequently overruled by the trial court from which he appealed. *Id.* at 755-56. Consistent with our conclusion in the instant matter, on appeal, this Court reversed appellant's revocation in *Copeland*, finding that appellant "received no notice that the trial court would consider revocation of his suspended sentence." *Id.* at 756.

Similarly, in *Cartwright v. Cartwright*, 53 Va. Cir. 367, 367 (*Isle of Wight Cnty.* Oct. 17, 2000), the defendant there had been ordered to pay child support to his ex-wife for the care of their two-year-old child. Two months after the divorce decree had been entered, defendant's ex-wife moved the court to issue a "Show Cause Summons" that compelled defendant to pay his ordered child support. *Id.* The summons stated that the defendant must "show cause, if any, why [he] should not, pursuant to Va. Code § 16.1-278.16 be imprisoned until [he] complies with the Court's order or be fined for failure to provide support." *Id.* at 368 (alterations in original). The juvenile court subsequently found the defendant in *Cartwright* guilty of contempt of court and sentenced him to six months in jail but suspended the sentence on condition that defendant become current on his child support payments before the next review date. *Id.* On the date set for review, Cartwright failed to appear, and the court issued a capias for his arrest, which stated that the defendant must "show cause . . . pursuant to Va. Code § 19.2-128" why he should not be imprisoned for failing to appear. *Id.* After the defendant was arrested on the capias, he was brought before the juvenile court, which found him guilty of failing to appear. *Id.* During the same hearing, the juvenile court revoked the previously suspended six-month sentence, and Cartwright appealed. *Id.* On appeal to the circuit court, Cartwright argued that the juvenile court had violated his due process rights "by failing to provide any pre-hearing notice that his suspended sentence might be revoked" and he further argued that the "capias did not . . . provide sufficient notice to him or his counsel that the [juvenile] court would take evidence on his wife's

charge that he had violated the terms of his suspended sentence." *Id.* at 369. The court ruled that "a simple show cause notice or a capias would suffice if it specified the nature of the allegedly unfulfilled condition" but stated that "at least some notice *directed to the revocation issue* must be given." *Id.* at 370-71.

Although both cases cited herein concerned the application of due process principles, these cases taken together support our conclusion that for the trial court to have notified Hairston of her violation, the capias or other process issued needed to be "*directed to the revocation issue*," *id.* at 371, and inform her that the trial court "would consider revocation of [her] suspended sentence," *Copeland*, 14 Va. App. at 756. This is not to say that the capias by itself was inadequate to inform Hairston that she faced the possible revocation of her suspended sentence. Indeed, a capias "can and sometimes does serve as a means of itemizing the allegations underlying a claimed probation violation." *Price v. Commonwealth*, 51 Va. App. 443, 447 (2008); *see Howie v. Commonwealth*, 222 Va. 625, 630 (1981) ("The show cause order . . . informed [appellant] fully of his alleged probation violations."). But "[t]he important thing is not the form, but the fact, of notice." *Price*, 51 Va. App. at 447. Because a "single criminal act can be a violation of more than one statute," *Cartwright v. Commonwealth*, 223 Va. 368, 371 (1982), and the "choice of offenses for which a criminal defendant will be charged is within the discretion of the Commonwealth's Attorney," *Kauffmann v. Commonwealth*, 8 Va. App. 400, 410 (1989), a defendant must have notice under Code § 19.2-306(B) of the fact of their

violations and the legal consequences that will result from the criminal charge levied against them.[3]

Indeed, nothing prevented the Commonwealth here from using a possible conviction on Hairston's original Code § 18.2-456 contempt of court charge as a basis for finding her in violation of her suspended sentence and later asking the circuit court to revoke the entirety of her suspended time. *See* Code §§ 19.2-306(A), -306.1(B). Similarly, the Commonwealth could have previously added a timely issued separate charge under Code § 19.2-306(B) that properly put Hairston on notice for her alleged violations of her suspended sentences, while leaving the original contempt of court charge in its initial form. But where, as here, the Commonwealth initially sought one avenue of criminal liability and later transformed it into another charge that was time-barred by statute—occurring well after the time to issue that particular charge had expired—the Commonwealth cannot be said to have complied with the legislature's requirements contained in Code § 19.2-306(B). Accordingly, because Hairston's charge of violating the terms of her suspended sentences under Code § 19.2-306 was not issued until May 8, 2024—more than one year after Hairston's period of suspension ended on October 19, 2019— the circuit court erred by holding a hearing on her violation. *See Hartless v. Commonwealth*, 29 Va. App. 172, 175 (1999) ("The good behavior requirement sufficiently defined a period of

---

[3] In *Curry v. Commonwealth*, No. 0180-15-1, slip op. at 4 (Va. Ct. App. Dec. 22, 2015) (alterations in original), a panel of this Court interpreted a prior version of Code § 19.2-306(B) which included the same language from the current statute regarding the requirement for a circuit court to "issue[] process to notify the accused or . . . compel his appearance before the court." There, the panel stated that "the plain language of [Code § 19.2-306(B)] does not require a detailed notice of the possible sentence; rather, it requires notice of the physical place and time of the hearing." *Id.* Our decision today does not conflict with this holding. Our reversal of the trial court in this case is not because it neglected to specify the full amount of revocable time when it issued the capias, but rather because the capias only informed Hairston that she was facing a possible contempt of court conviction. And once the Commonwealth had amended the contempt of court charge to be a violation of probation under Code § 19.2-306, such amendment was untimely.

suspension."); *Hill v. Commonwealth*, 73 Va. App. 206, 219-20 (2021) (noting that the terms

"'unsupervised' probation" and "good behavior" are used interchangeably, with "the only real

distinction" being whether they are "supervised by a probation officer or not").[4]

C. *Under the amended Code § 19.2-306, Hairston's period of suspension was not automatically tolled.*

Citing to Code § 19.2-306(C) and *Allison v. Commonwealth*, 40 Va. App. 407 (2003), the

Commonwealth asserts that its failure is not fatal to Hairston's revocation, as Hairston absconded

such that it automatically extended the period of her suspension making the later charge of

violating a suspended sentence timely. We disagree.

Code § 19.2-306(C) states:

> The court shall measure the period of any suspension of sentence
> from the date of the entry of the original sentencing order.
> However, if a court finds that a defendant has absconded from the
> jurisdiction of the court, the court may extend the period of
> probation or suspended sentence for a period not to exceed the
> length of time that such defendant absconded.

The Commonwealth contends that the circuit court found Hairston to have "absconded from the

jurisdiction of the court" and that this automatically extended her term of probation, thus making

the issuance of the probation revocation on May 8, 2024, timely. In support, the Commonwealth

cites to *Allison*, where the appellant "fail[ed] to maintain contact with his probation officer" and

therefore "absconded from probation supervision and the jurisdiction of the trial court. Thus, the

tolling provisions of Code § 19.2-306 were triggered." *Allison*, 40 Va. App. at 412. But the

---

[4] As for the Commonwealth's final argument that our reading of the statute creates an "absurd result" whereby persons subject to conditions of a suspended sentence may elude the consequences of their actions by absconding, we note that the requirements of Code § 19.2-306(B) only require that the "court *issue[] process*" within the time ordered by the General Assembly. There is no requirement in the statute that the defendant must *receive* the notice for it to be effective.

version of Code § 19.2-306 at issue in *Allison* is different than the version currently enacted.

That version stated:

> In the event that any person placed on probation shall leave the jurisdiction of the court without the consent of the judge, or having obtained leave to remove to another locality violates any of the terms of his probation, he may be apprehended and returned to the court and dealt with as provided above.

*Id.* at 410. Under the statute at issue in *Allison*, a defendant on probation "may be apprehended and returned to the court," effectively giving discretion to law enforcement to determine whether a defendant's period of suspension would be tolled. *Id.* By contrast, the present version of the statute allows a court, after revoking a suspended sentence, to resuspend that sentence measured from the original sentencing order without counting any period of time when the defendant had absconded. Code § 19.2-306(C). Accordingly, *Allison*'s analysis of a different version of the statute at issue is not binding on the current statute, and the plain language of Code § 19.2-306(C) in effect now does not support the automatic tolling of a defendant's probation or period of suspension. Therefore, as a result of the General Assembly's revisions to the instant statute, the extension of Hairston's probationary period was not automatic and needed to be extended by order of the trial court.[5] Thus, because the trial court did not extend Hairston's probation here, Hairston's period of suspension ended on October 19, 2019, and the notice issued to Hairston on May 8, 2024, remains untimely.[6]

---

[5] Code § 19.2-304 permits a court to "increase or decrease the probation period . . . upon a hearing after reasonable notice to both the defendant and the attorney for the Commonwealth."

[6] We do not reach Hairston's remaining assignment of error, as judicial restraint requires us to base our decisions on the best and narrowest grounds. *Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 205 n.15 (2024).

## III. CONCLUSION

For the foregoing reasons, we hold that the notice issued to Hairston was insufficient under Code § 19.2-306 and that it was error for the trial court to hold Hairston's revocation hearing.

*Reversed and final judgment.*